

1  RYAN J. CLARKSON (S.B. #257074)
   rclarkson@redlawllp.com
2  EDWARD D. DUBENDORF (S.B. #275456)
   edubendorf@redlawllp.com
3  **RED LAW, LLP**
   100 Wilshire Blvd., Suite 950
4  Santa Monica, CA 90401
   Tel: (310) 917-1070
5  Fax: (310) 917-1001

6  Attorneys for Plaintiff Mara Chow and the
   Plaintiff Class

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                             **WESTERN DIVISION**

11
   MARA   CHOW,   individually   and   on  )  Case No. C 12-04624-R (JCx)
12 behalf of all others similarly situated,    )
                                               )  <u>CLASS ACTION</u>
13                      Plaintiff,             )
                                               )  **PLAINTIFF'S NOTICE OF**
14            vs.                              )  **MOTION AND MOTION FOR**
                                               )  **CLASS CERTIFICATION;**
15 NEUTROGENA CORP., a Delaware                )  **MEMORANDUM OF POINTS AND**
   Corporation; and DOES 1 through 100,        )  **AUTHORITIES**
16 inclusive,                                  )
                                               )  **[PROPOSED] ORDER LODGED**
17                      Defendants.            )  **HEREWITH**
                                               )
18                                             )  Date:        November 19, 2012
                                               )  Time:        10:00 a.m.
19                                             )  Judge:       Hon. Manuel L. Real
                                               )  Courtroom:   8
20                                             )
                                               )
21                                             )
                                               )
22                                             )

23          Plaintiff Mara Chow ("Plaintiff" or "Ms. Chow"), on behalf of herself and all

24 others similarly situated, submits the following memorandum of points and authorities

25 in support of her motion for class certification in this action against Neutrogena

26 Corporation ("Defendant" or "Neutrogena"), and states as follows:

27 ///

28 ///

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

1

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 19, 2012 at 10:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled court, located at 312 North Spring Street, Los Angeles, California, Ms. Chow will, and hereby does, move the Court for an order certifying this case as a class action pursuant to Fed. R. Civ. P. 23(a)(1), 23(b)(2), and 23(b)(3) for the reasons discussed in the attached Memorandum of Points and Authorities.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3.

The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Mara Chow, Edward D. Dubendorf, and Ryan J. Clarkson, the Request for Judicial Notice, and the entire file in this matter, both oral and documentary, as may properly come before the Court.

DATED: August 23, 2012            **RED LAW, LLP**


                                   /s/ Ryan J. Clarkson_____
                                  Ryan J. Clarkson
                                  Edward D. Dubendorf
                                  Attorneys for Plaintiff Mara Chow and
                                  the Plaintiff Class

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF FACTS ......................................................................2

    A.      THE PARTIES ............................................................................2

        1.      *Plaintiff* ...........................................................................2

        2.      *Defendant Neutrogena Corporation* ................................3

    B.      THE PRODUCTS AND ADVERTISING AT ISSUE ........................4

        1.      *Rapid Wrinkle Repair SPF 30* .........................................4

        2.      *Rapid Wrinkle Repair Night* ...........................................5

        3.      *Rapid Wrinkle Repair Serum* ..........................................5

        4.      *Rapid Wrinkle Repair Eye* ..............................................6

        5.      *Healthy Skin Anti-Wrinkle Cream SPF 15* ......................7

        6.      *Healthy Skin Anti-Wrinkle Cream Night* .........................7

    C.      THE SCIENCE AND LACK OF SUBSTANTIATION ........................8

    D.      PROCEDURAL HISTORY .............................................................9

    E.      COMPLIANCE WITH LOCAL RULES ...........................................10

III.    CLASS DEFINITION ...........................................................................10

IV.     LEGAL STANDARD ...........................................................................11

    A.      UCL AND FAL ..........................................................................11

    B.      CLRA .......................................................................................13

    C.      BREACH OF EXPRESS WARRANTY ...........................................14

V.      STANDING ..........................................................................................15

    A.      PLAINTIFF HAS STANDING UNDER THE UCL AND FAL .........15

        1.      *Plaintiff Has Properly Pleaded Injury In Fact* ..............16

        2.      *Plaintiff Has Properly Pleaded Causation* ....................17

    B.      PLAINTIFF HAS STANDING UNDER THE CLRA ........................18

    C.      PLAINTIFF HAS STANDING UNDER THE EXPRESS WARRANTY CLAIM .......18

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

D.    PLAINTIFF HAS ARTICLE III STANDING ......................................19

VI.    LEGAL ARGUMENT ..............................................................................20

A.    LEGAL STANDARD FOR RULE 23 CLASS ACTIONS ....................................20

B.    THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED ...............................21

1.    *Numerosity Is Satisfied* ..................................................21

2.    *Commonality Is Satisfied* ..............................................23

3.    *Typicality Is Satisfied* ....................................................24

4.    *Adequate Representation Is Satisfied* ...........................25

a.    Ms. Chow Is An Adequate Class Representative................26

b.    Red Law, LLP Is Qualified and Competent ......................26

C.    THE REQUIREMENTS OF RULE 23(b)(2) AND 23(b)(3)ARE SATISFIED .......27

1.    *Rule 23(b)(2) Is Satisfied* ...............................................27

2.    *Rule 23(b)(3) Is Satisfied* ...............................................28

a.    Common Issues Predominate Over Individual
Issues for All Four Causes of Action ................................29

b.    Class Treatment Is A Superior Method of
Adjudication ......................................................................30

D.    THE COURT SHOULD CERTIFY A NATIONAL CLASS................................32

E.    APPOINTMENT OF CLASS COUNSEL .........................................................34

VII.    CONCLUSION .......................................................................................35

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...........................................................................29, 30, 31

*Ball v. Am. Trial Lawyers Ass'n*,
  14 Cal. App. 3d 289 (1971) ...........................................................................12

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ...........................................................................21

*Brockey v. Moore*,
  107 Cal. App. 4th 86 (2003) ...........................................................................12

*Bruno v. Quten Research Inst.,
  LLC*, 280 F.R.D. 524 (C.D. Cal. 2011) ...........................................................................33

*Canatella v. State of California*,
  304 F.3d 843, 852 (9th Cir. 2002) ...........................................................................19

*Charlebois v. Angels Baseball, LP*,
  2011 U.S. Dist. LEXIS 71452 (C.D. Cal. 2011) ...........................................................................21

*Chavez v. Blue Sky Natural Beverage Co.*,
  268 F.R.D. 365 (N.D. Cal. 2010) ...........................................................................14

*Clothesrigger, Inc. v. GTE Corp.*,
  191 Cal. App. 3d 605 (1987) ...........................................................................33, 34

*Colgan v. Leatherman Tool Group, Inc.*,
  135 Cal. App. 4th 663 (2006) ...........................................................................12, 13

*Committee on Children's Television, Inc. v. General Foods Corp.*,
  35 Cal. 3d 197 (1983) ...........................................................................11

*Consumer Advocates v. Echostar Satellite Corp.*,
  113 Cal. App. 4th 1351 (2003) ...........................................................................12

*Countrywide Fin. Corp. v. Bundy*,
  187 Cal. App. 4th 234 (2010) ...........................................................................12

*Daugherty v. American Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824 (2006) ...........................................................................15

*Diamond Multimedia Systems, Inc. v. Super. Ct.*,
  19 Cal. 4th 1036 (1999) ...........................................................................33

*Dukes v. Wal-Mart Stores, Inc.*,
  603 F. 3d 571 (9th Cir. 2010) ...........................................................................25

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

iii

*Dukes v. Wal-Mart, Inc.*,
  474 F.3d 1214 (9th Cir. 2007).................................................................23, 25, 28, 31

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)..............................................................................................21

*Engalla v. Permanente Medical Group, Inc.*,
  15 Cal. 4th 951 (1997).........................................................................................14

*Estrella v. Freedom Fin. Network, LLC*,
  2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010)...............................................33

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982)........................................................................................21, 25

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)......................................................................*passim*

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992).........................................................................21, 24

*Harris v. Palm Springs Alpine Estates*,
  329 F.2d 909 (9th Cir. 1964)...............................................................................22

*Henderson v. Gruma Corp.*,
  2011 U.S. Dist. LEXIS 41077 (C.D. Cal. 2011)...............................................19

*Hurtado v. Super. Ct.*,
  11 Cal. 3d 574 (1974)..........................................................................................33

*In re Charles Schwab Corp. Sec. Litig.*,
  264 F.R.D. 531 (N.D. Cal. 2009)........................................................................34

*In re Mego. Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)...............................................................................21

*In re Steroid Hormone Product Cases*,
  181 Cal. App. 4th 145 (2010)........................................................................13, 14

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009)................................................................................*passim*

*In re Wells Fargo Home Mortg.*,
  571 F.3d 953 (9th Cir. 2009)...............................................................................29

*Jenkins v. Raymark Indus., Inc.*,
  782 F.2d 468 (5th Cir. 1986)...............................................................................23

*Jimenez v. Domino's Pizza, Inc.*,
  238 F.R.D. 241 (C.D. Cal. 2006).......................................................................26

*Johns v. Neutrogena Corp.*,
  LASC Case No. BC481382)..........................................................................31, 32

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ............................................................................ 11

*Keilholtz v. Lennox Hearth Prods. Inc.*,
  268 F.R.D. 330 (N.D. Cal. 2010) ............................................................ 34

*Keith v. Buchanan*,
  173 Cal. App. 3d 13 (1985) ...................................................................... 15

*Kleffman v. Vonage Holdings Corp.*,
  49 Cal. 4th 334 (2010) ............................................................................ 11

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ..................................................................15, 16, 18, 19

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................ 27

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................ 19

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
  97 Cal. App. 4th 1282 (2002) ................................................12, 13, 14, 29

*Mazza v. Am. Honda Motor Co.*,
  254 F.R.D. 610 (C.D. Cal. 2008) ............................................................ 22

*McDonnell Douglas Corp. v. Thiokol Corp.*,
  124 F.3d 1173 (9th Cir. 1997) ................................................................ 15

*Mut. Bank, FA v. Super. Ct.*,
  24 Cal. 4th 906 (2001) ............................................................................ 33

*Nagel v. Twin Labs., Inc.*,
  109 Cal. App. 4th 39 (2003) .................................................................... 13

*Narouz v. Charter Comm., LLC*,
  591 F.3d 1261 (9th Cir. 2010) ................................................................ 20

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  238 F.R.D. 482 (C.D. Cal. 2006) ............................................................ 29

*Norwest Mortg., Inc. v. Super. Ct.*,
  72 Cal. App. 4th 214 (1999) .................................................................... 33

*Orantes-Hernandez v. Smith*,
  541 F. Supp. 351 (C.D. Cal. 1982) .......................................................... 21

*Parkinson v. Hyundai Motor Am.*,
  258 F.R.D. 580 (C.D. Cal. 2008) ....................................................... 33, 34

*Pecover v. Elec. Arts Inc.*,
  2010 U.S. Dist. LEXIS 140632 (N.D. Cal. 2010) .................................. 33

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

*People v. Wahl*,
  39 Cal. App. 2d Supp. 771 (1940)...................................................................12

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797, 818 (1985) ....................................................................32, 34

*Phillips v. Accredited Home Lenders Holding Co.*,
  2007 U.S. Dist. LEXIS 59880 (C.D. Cal. 2007).........................................24

*Probe v. State Teachers' Retirement Sys.*,
  780 F.2d 776 (9th Cir. 1986) .......................................................................27

*Reynoso v. S. County Concepts*,
  2007 U.S. Dist. LEXIS 95691 (C.D. Cal. 2007).........................................23

*Silicon Image, Inc. v. Analogix Semiconductor*,
  642 F. Supp. 2d 957 (N.D. Cal. 2008) ........................................................12

*Slaven v. BP Am., Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) .................................................................22

*Smith v. Univ. of Wash. Law School*,
  233 F.3d 1188 (9th Cir. 2000).....................................................................27

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .......................................................................24

*Tchoboian v. Parking Concepts, Inc.*,
  2009 U.S. Dist. LEXIS 62122 (C.D. Cal. 2009).........................................22

*Thomas v. Anchorage Equal Rights Comm.*,
  220 F.3d 1134, 1139 (9th Cir. 2000)..........................................................19

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) .......................................................................29

*Vasquez v. Super. Ct.*,
  4 Cal. 3d 800 (1971) ....................................................................................13

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) .......................................................................30

*Von Koenig v. Snapple Beverage Corp.*,
  713 F. Supp. 2d 1066 (E.D. Cal. 2010) .......................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .....................................................................20, 21, 23, 25

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998)......................................................................27

*Weinstat v. Dentsply Int'l, Inc.*,
  180 Cal. App. 4th 1213 (2010)......................................................................12

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

*Williams v. Gerber Prods. Co.,*
  552 F.3d 934 (9th Cir. 2008)..................................................................11

*Yamamoto v. Omiya,*
  564 F.2d 1319 (9th Cir. 1977)...............................................................21

*Zinser v. Accufix Research Inst.,*
  253 F.3d 1180 (9th Cir. 2001)........................................................21, 29

## Statutes

Cal. Bus. & Prof. Code § 17200, *et seq.*................................................2, 12

Cal. Bus. & Prof. Code § 17204 ..............................................................15

Cal. Bus. & Prof. Code § 17500, *et seq.*................................................2, 11

Cal. Civ. Code § 1750, *et seq.* ...................................................................2

Cal. Civ. Code § 1780(a) .........................................................................18

Cal. Civ. Code § 1781 ...............................................................................13

Cal. Civ. Code §1770(a)(7)......................................................................13

Cal. U. Com. Code, § 2313 ......................................................................15

## Rules

Fed. R. Civ. P. 23 ...........................................................................*passim*

Local Rule 23-3.........................................................................................10

Local Rule 7-3...........................................................................................10

## Treatises

1 Alba Cone & Herbert B. Newberg,
  *Newberg on Class Actions* § 3.3 (4th ed. 2002).....................................21

49 A.L.R.5th 1 ..........................................................................................14

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
  Federal Practice & Procedure § 1778 (2d ed.1986).................................29

*Newberg on Class Actions*, § 4:30 (4th ed. 2002) .....................................32

## Constitutional Provisions

U.S. Const. art. III...............................................................................15, 19

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This straightforward false advertising case is perfectly suited for class treatment.  Neutrogena markets and sells six purported "anti-aging" products, including (1) Rapid Wrinkle Repair SPF 30 (pictured below), (2) Rapid Wrinkle Repair Night, (3) Rapid Wrinkle Repair Serum, (4) Rapid Wrinkle Repair Eye (collectively the "Rapid Wrinkle Repair Products"), (5) Healthy Skin Anti-Wrinkle Cream SPF 15 (pictured below), and (6) Healthy Skin Anti-Wrinkle Cream Night (collectively the "Healthy Skin Anti-Wrinkle Products") (all six products are collectively referred to herein as the "Products" or individually as a "Product"). Neutrogena claims that the Products are "clinically proven" and cause a person to look younger by preventing and repairing wrinkles, fine lines, age spots, or other signs of aging in just one week, among other representations.





In reality, the Products do <u>not</u> cause a person to look younger.  The Products do <u>not</u> prevent or repair wrinkles, fine lines, age spots, or other signs of aging, let alone in just one week.  And the Products are <u>not</u> "clinically proven."  As such, every putative class member has suffered a common injury, i.e. paying for a worthless product.

1

Neutrogena markets, sells, and distributes the Products to all consumers based on uniform misrepresentations contained on the product label and packaging of each and every unit of Product, among other advertising media.  Based on these uniform misrepresentations, Neutrogena has defrauded and continues to defraud the public.  Plaintiff seeks to certify a class under Cal. Civ. Code § 1750, *et seq.*, known as the Consumers Legal Remedies Act ("CLRA"); (2) Cal. Bus. & Prof. Code § 17200, *et seq.*, known as the Unfair Competition Law ("UCL"), (3) Cal. Bus. & Prof. Code § 17500, *et seq.*, known as the False Advertising Law ("FAL"), and (4) Breach of Express Warranty.

Simply put, class certification is appropriate here because Plaintiff satisfies all necessary pre-requisites to – and meets all required elements for – class certification.  The best and most efficient method of adjudicating the claims of each of the many putative class members is to do so in <u>this action</u> according to <u>common proof</u>.

## II.
## STATEMENT OF FACTS

**A.   THE PARTIES**

### 1.   *Plaintiff*

Plaintiff resides in Los Angeles County, California.  First Amended Complaint ("FAC") at ¶ 20; Mara Chow Declaration ("Chow Decl.") at ¶ 2.  In early 2011, Plaintiff purchased each of the two Healthy Skin Anti-Wrinkle Products at a drug store located in the City of Santa Monica, California.  FAC at ¶ 21; Chow Decl. at ¶ 3.  Plaintiff paid approximately fifteen dollars ($15.00) each.  FAC at ¶ 21; Chow Decl. at ¶ 4.  In late 2011, Plaintiff purchased three of the four Rapid Wrinkle Repair Products at a drug store located in and around the City of Santa Monica, California.  FAC at ¶ 22; Chow Decl. at ¶ 5.  She paid approximately twenty-five dollars

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

($25.00) each.  FAC at ¶ 22; Chow Decl. at ¶ 6.  Prior to Plaintiff's purchase of each of the Products, Plaintiff read, reviewed, and reasonably relied upon Defendant's claims and statements contained in its advertising and other promotional materials for the Products.  FAC at ¶ 23; Chow Decl. at ¶ 7.  In particular, Plaintiff purchased the Products because of the claims by Neutrogena that the Products were "clinically proven" and capable of preventing and repairing wrinkles, fine lines, age spots, and other signs of aging in just one week.  FAC at ¶ 50; Chow Decl. at ¶¶ 8-13.

Plaintiff used each of the Products as instructed, yet Plaintiff did not experience any of the advertised benefits, including "prevention" or "repair" of her wrinkles, fine lines, age spots, or other signs of aging whatsoever, let alone within one week, as a result of using the Products.  FAC at ¶ 25; Chow Decl. at ¶¶ 14-15. As a result of Defendant's conduct, Plaintiff has suffered injury in fact and has lost money or property as a result of her reliance upon Neutrogena's false representations. FAC at ¶ 49; Chow Decl. at ¶ 16.  Plaintiff paid more than the Products were worth and would not have purchased the Products if she had known that the advertising as described herein was false.  FAC at ¶ 52; Chow Decl. at ¶¶ 17-18.

## 2.   *Defendant Neutrogena Corporation*

Neutrogena is a Delaware corporation headquartered in Los Angeles.  FAC at ¶ 26.  Neutrogena was established in 1930 to develop and commercialize cosmetic products.  FAC at ¶ 27.  Neutrogena, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.  FAC at ¶ 29.  In 1994, Neutrogena was acquired by Johnson & Johnson at a price of nearly $1 Billion.

Neutrogena is the owner, manufacturer, and distributor of the Products, and is the company that created and/or authorized the false, misleading, and deceptive advertisements and/or packaging and labeling for the Products.  FAC at ¶ 30. Through its false and deceptive claims, Neutrogena has been successful in

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

fraudulently inducing consumers into purchasing the Products and, in the process, making millions of dollars for Neutrogena. FAC at ¶ 91. In 2011, assisted by sales of the Products, Neutrogena earned $3.7 Billion in revenue.

**B.   THE PRODUCTS AND ADVERTISING AT ISSUE**

Defendant's purportedly "clinically proven" anti-aging Products contain a uniform and consistent message across a broad range of media.

**1.   *Rapid Wrinkle Repair SPF 30***

Each and every product label and package, among other forms of advertising, for Rapid Wrinkle Repair SPF 30 states the following:

- "Rapid Wrinkle Repair;"
- "[V]isible results in just one week;"
- "Works quickly for visible results in just one week;"
- "[D]elivers pure stabilized retinol into skin's surface quickly and effectively, leaving skin feeling smooth and younger-looking;"
- "Clinically proven;"
- "Fade the look of stubborn deep wrinkles, including crow's feet, forehead & cheek wrinkles;"
- "Brighten skin's tone;"
- "Smooth fine lines & texture;"
- "[R]enew the look of skin throughout the day, helping to smooth wrinkles fast and diminish the look of age spots;"
- "[S]cientifically proven;"
- "[R]apid results on the appearance of fine lines and wrinkles;" and
- "[R]eplenish and rejuvenate the look of skin."

Exhibit ("Ex.") 1 to Dubendorf Decl.

///

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

**2.** *Rapid Wrinkle Repair Night*

Each and every product label and package, among other forms of advertising, for Rapid Wrinkle Repair Night states the following:

- "Rapid Wrinkle Repair;"
- "[V]isible results in just one week;"
- "Works quickly for visible results in just one week;"
- "[D]elivers pure stabilized retinol into skin's surface quickly and effectively, leaving skin feeling smooth and looking younger;"
- "So effective, 100% of women had noticeable results in just one week;"
- "Clinically proven;"
- "Fade the look of stubborn deep wrinkles, including crow's feet, forehead & cheek wrinkles;"
- "Brighten skin's tone;"
- "Smooth fine lines & texture;"
- "[W]orks to continuously renew the look of skin throughout the day, helping to smooth wrinkles fast and diminish the look of age spots;"
- "[S]cientifically proven;"
- "[R]apid results on the appearance of fine lines and wrinkles;" and
- "[R]eplenish and rejuvenate the look of skin."

Ex. 2 to Dubendorf Decl.

**3.** *Rapid Wrinkle Repair Serum*

Each and every product label and package, among other forms of advertising, for Rapid Wrinkle Repair Serum states the following:

- "Rapid Wrinkle Repair;"
- "[V]isible results in one week;"
- "Instantly smoother skin;"
- "Visible results in just one week;"

5

- "So effective, 100% of women had visible results, instantly;"
- "[Q]uickly and effectively deliver visible results in just one week;"
- "[C]linically proven;"
- "Fade the look of stubborn deep wrinkles, including crow's feet, forehead & cheek wrinkles;"
- "Brighten skin's tone;"
- "Smooth fine lines & texture;"
- "[W]orks to continuously renew the look of skin throughout the day, helping to smooth wrinkles fast and diminish the look of age spots;"
- "[S]cientifically proven;"
- "[A]ccelerates skin's surface activity for rapid results on the appearance of fine lines and wrinkles;" and
- "[R]eplenish and rejuvenate the look of skin."

Ex. 3 to Dubendorf Decl.

### 4.   *Rapid Wrinkle Repair Eye*

Each and every product label and package, among other forms of advertising, for Rapid Wrinkle Repair Eye states the following:

- "Rapid Wrinkle Repair;"
- "[T]argets fine lines & crow's feet;"
- "Works quickly for visible results in just one week;"
- "[D]elivers pure stabilized retinol into skin's surface quickly and effectively, leaving skin feeling smooth and looking younger;"
- "Clinically proven;"
- "Fade the look of stubborn crow's feet;"
- "Brighten and even under eye area;"
- "Smooth fine lines & texture;"
- "Reduce the look of dark circles;"

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

- "[W]orks to continuously renew the look of skin throughout the day, helping to smooth wrinkles fast and diminish the look of age spots;"
- "[S]cientifically proven;"
- "[R]apid results on the appearance of fine lines and wrinkles;" and
- "[R]eplenish and rejuvenate the look of skin."

Ex. 4 to Dubendorf Decl.

### 5. *Healthy Skin Anti-Wrinkle Cream SPF 15*

Each and every product label and package, among other forms of advertising, for Healthy Skin Anti-Wrinkle Cream SPF 15 states the following:

- "Anti-Wrinkle Cream;"
- "Visibly reduces appearance of fine lines, wrinkles and age spots;"
- "[C]linically proven to start to visibly reduce the appearance of fine lines and wrinkles in one week;"
- "[H]elps prevent premature signs of aging from the sun for healthier, younger-looking skin;"
- "Visibly reduces appearance of fine lines and wrinkles;"
- "[W]orks deep within the skin's surface where wrinkles develop;"
- "[P]revent premature signs of aging such as fine lines, wrinkles, and age spots;" and
- "Clinically Proven To: …Improve skin clarity[, and] Visibly reduce age spots."

Ex. 5 to Dubendorf Decl.

### 6. *Healthy Skin Anti-Wrinkle Cream Night*

Each and every product label and package, among other forms of advertising, for Healthy Skin Anti-Wrinkle Cream Night states the following:

- "Anti-Wrinkle Cream;"

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

7

- "Visibly reduces appearance of fine lines, wrinkles and age spots;"
- "[C]linically proven to start to visibly reduce the appearance of fine lines, wrinkles and age spots in one week, for healthier, younger-looking skin;"
- "Visibly reduces the appearance of fine lines and wrinkles;"
- "[W]orks deep within the skin's surface where wrinkles develop;" and
- "Clinically Proven To: …Improve skin clarity[, and] Visibly reduce age spots."

Ex. 6 to Dubendorf Decl.

## C.   THE SCIENCE AND LACK OF SUBSTANTIATION

It is well known that how a person ages is controlled by his or her genes.  FAC at ¶ 63.  Intrinsic aging, also known as the natural aging process, is the key cause of wrinkles, fine lines, and other signs of aging.  FAC at ¶ 64.  Intrinsic aging begins in the mid-20's and involves slowing in the production of collagen and elastin.  FAC at ¶ 65.  Dead cells do not shed as quickly and turnover of new skin cells decreases.  FAC at ¶ 65.  Retinol is among the most common ingredients in creams and lotions that claim to cause a person to look younger.  FAC at ¶ 66.  However, research regarding the efficacy of retinol-based topical applications like the Products remains incomplete and inconclusive.  FAC at ¶ 67.  In fact, no reliable and consistent scientific studies "prove" the efficacy of retinol in preventing and repairing wrinkles, fine lines, age spots, or other signs of aging, let alone within one week.  FAC at ¶ 68.

Even if there existed well-settled, scientific substantiation that retinol-based topical applications like the Products can make a person look younger or prevent and repair wrinkles, fine lines, age spots, or other signs of aging within one week (there is not), the dosage of retinol in the Products is so negligible as to make it impossible to cause the advertised effect.  FAC at ¶ 69.

///

///

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

In fact, on January 17, 2012, the National Advertising Division of the Better Business Bureau ("NAD") reported the results of its examination into the validity of claims regarding Neutrogena's Rapid Wrinkle Repair product as part of its ongoing monitoring program.  FAC at ¶ 8.  The NAD concluded that none of the testing proffered by Neutrogena supported Neutrogena's claims that "Rapid Wrinkle Repair substantially reduces or eliminates wrinkles in just one week."  FAC at ¶ 9.  The NAD then recommended that Neutrogena modify its claim that the Rapid Wrinkle Repair product smooth wrinkles in just one week "to avoid conveying the unsupported message that wrinkles are substantially reduced or eliminated in one week."  FAC at ¶ 10.  Like the Rapid Wrinkle Repair product's claims investigated by the NAD, Neutrogena's claims in connection with the other Products are unsupported.  FAC at ¶ 11.

Despite this, Defendant markets and advertises the Products in a false and deceptive manner.  FAC at ¶ 70.  Defendant does so through a uniform and consistent message that the Products can effectuate an impossible result, thereby tempting a vulnerable class of people with the hope of a quick fix or a way to avoid the sometimes embarrassing exterior effects of intrinsic aging.  FAC at ¶ 71. Defendant has disseminated this uniform message on the product labels and packaging, as well as through a broad range of media, including, by way of example and without limitation, print media, web site, point-of-purchase displays, and the like.  FAC at ¶ 72.  Defendant's advertising conveys a single, consistent false and misleading message to consumers: that the Products are "clinically proven" and can prevent and repair wrinkles, fine lines, age spots, or other signs of aging in as little as one week.  FAC at ¶ 73.

**D.   PROCEDURAL HISTORY**

On April 24, 2012, Plaintiff, on behalf of all persons in the United States who purchased the Products from February 15, 2008 through the present, filed a class

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

action complaint against Neutrogena for (1) violation of the CLRA, (2) violation of the UCL, (3) violation of the FAL, and (4) breach of express warranty.  On or about May 25, 2012, Neutrogena removed the matter to this Court.  On or about July 25, 2012, Neutrogena answered Plaintiff's complaint.  At the present time, there are no motions outstanding other than the instant motion for class certification.

## E.   COMPLIANCE WITH LOCAL RULES

Under Local Rule 23-3, a party alleging a class action must move for class certification within 90 days of filing in this Court.  Accordingly, this motion is timely filed as of August 23, 2012.  Counsel for Plaintiff met and conferred with counsel for Defendant regarding the substance of this motion before bringing this motion consistent with Local Rule 7-3.  Clarkson Decl. at ¶ 2.

# III.
# CLASS DEFINITION

Plaintiff seeks class certification under Rule 23(a), 23(b)(2), and 23(b)(3) of the following nationwide class (the "Class"):

> All persons residing in the United States who purchased the Products for personal use and not for resale during the time period February 15, 2008, through the present.  Excluded from the Class are Neutrogena's officers, directors, and employees, and any individual who received remuneration from Neutrogena in connection with that individual's use or endorsement of the Products.

FAC at ¶ 41(a).  In the alternative, Plaintiff seeks class certification under Rule 23(a), 23(b)(2), and 23(b)(3) of the following California class:

> All persons residing in the State of California who purchased the Products for personal use and not for resale during the time period February 15, 2008, through the present.  Excluded from the Class are Neutrogena's officers, directors, and employees, and any individual who received remuneration from Neutrogena in connection with that individual's use or endorsement of the Products.

FAC at ¶ 41(b).

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

# IV.

# LEGAL STANDARD

## A.  UCL AND FAL

In California, "[t]o state a claim under either the UCL or [FAL], based on false advertising or promotional practices, 'it is necessary only to show that members of the public are likely to be deceived.'"  *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)).  The California Supreme Court has recognized "that these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood[,] or tendency to deceive or confuse the public.'" *Kasky*, 27 Cal. 4th at 951; *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  California law provides that even otherwise benign language can be found to "add to the potential deception" in conjunction with otherwise unsupported claims.  *Gerber*, 552 F.3d at 938.

In other words, the UCL and FAL apply not only to statements that are "untrue," but also to "misleading" statements.  *See* Cal. Bus. & Prof. Code § 17200 (applies to advertising that is "unfair, deceptive, untrue, or misleading"); Cal. Bus. Prof. Code § 17500 (applies to advertising that is "untrue or misleading"); and *Kleffman v. Vonage Holdings Corp*., 49 Cal. 4th 334, 343 (2010) (noting that UCL applied to misleading statements that were not necessarily misrepresentations of fact).

Thus, a plaintiff suing for fraud (i.e., false advertising) under the UCL or FAL[1] is not required to allege or prove actual deception, reasonable reliance, or damage for members of the class.  *See, e.g., Tobacco II*, 46 Cal. 4th at 312 ("A [common law] fraudulent deception must be actually false, known to be false by the perpetrator, and

---

[1] A violation of the UCL's fraud prong is also a violation of the FAL. *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 210 (1983).

reasonably relied upon by a victim who incurs damages.  None of these elements are required to state a claim for relief under the UCL.") (internal citations omitted); and *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1290 (2002) ("[A] section 17200 violation, unlike common law fraud, can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.").

Moreover, the lack of any requirement to prove actual falsity, reliance, or damages "reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *Tobacco II*, 46 Cal. 4th at 312; *see also Weinstat v. Dentsply Int'l, Inc.,* 180 Cal. App. 4th 1213, 1223 (2010).

"In determining whether a statement is misleading under the statute, 'the primary evidence in a false advertising case is the advertising itself.'" *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 679-80 (2006) (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003)).  "The 'misleading character' of a given representation 'appears on applying its words to the facts.'" *Colgan*, 135 Cal. App. 4th at 679-80 (quoting *People v. Wahl*, 39 Cal. App. 2d Supp. 771, 774 (1940)).

This issue is generally considered to be a factual issue, which should be decided at trial.  *See, e.g., Countrywide Fin. Corp. v. Bundy*, 187 Cal. App. 4th 234, 257 (2010) ("Whether particular conduct is 'unfair,' 'unlawful' or 'fraudulent' within the meaning of Business and Professions Code section 17200 is generally a question of fact…..").  No extrinsic evidence is required to raise a factual issue.  *Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957, 967-69 (N.D. Cal. 2008) ("The Court concludes that [the plaintiff] is not required to provide extrinsic evidence in support of its unfair competition claim and that there is a fact question as to this issue."); and *Consumer Advocates v. Echostar Satellite Corp*., 113 Cal. App. 4th 1351, 1360-62 (2003).  Further, if "a person of ordinary intelligence could reasonably be deceived or confused, that is all that is required."  *Ball v. Am. Trial Lawyers Ass'n*, 14 Cal. App. 3d 289, 309 (1971).

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

**B. CLRA**

The CLRA proscribes certain "unfair methods of competition and unfair and deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer," including "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Cal. Civ. Code §1770(a)(7). "The CLRA is to be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Colgan*, 135 Cal. App. 4th at 679-80 (2006) (internal citations omitted).

As with the UCL and FAL, the "reasonable consumer" standard also applies to CLRA claims. *Id.* at 680 ("The standards for determining whether a representation is misleading under the False Advertising Law apply equally to claims under the CLRA. Conduct that is likely to mislead a reasonable consumer thus violates the CLRA."); *see also Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39 (2003).

The CLRA specifically authorizes class actions. *See* Cal. Civ. Code § 1781. However, unlike the UCL, the CLRA requires a showing that "both the named and unnamed class members must have suffered some damage caused by a practice deemed unlawful under [the CLRA]." *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 155 (2010). However, if a plaintiff can show that "'material misrepresentations were made to the class members, at least an inference of reliance [i.e., causation/injury] would arise as to the entire class.'" *Mass. Mut.*, 97 Cal. App. 4th at 1292-93 (2002) (quoting *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 814 (1971)). As the court in *Massachusetts Mutual* explained:

> Causation as to each class member is commonly proved more likely than not by materiality. That showing will undoubtedly be conclusive as to most of the class. The fact that a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality to all.

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

97 Cal. App. 4th at 1292.

Again, materiality of the misrepresentation is judged by the "reasonable person standard," i.e., a misrepresentation is deemed material "if a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of the transaction in question." *Id.* (citing *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 977 (1997)).  Conversely, materiality is <u>not</u> based on the subjective beliefs or states of mind of individual class members.  *Steroid Hormone*, 181 Cal. App. 4th at 156 ("In ruling that the materiality question [under the CLRA] depended on each member's subjective belief regarding value, the trial court was led astray by [the defendant's] erroneous legal assumption [that this required an] . . . examination of each class member's subjective belief. . . ."); *see also Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010) (materiality of alleged misrepresentation did not depend on each class member's subjective belief).  Finally, "materiality is generally a question of fact unless 'the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'" *Steroid Hormone*, 181 Cal. App. 4th at 157 (citing *Engalla*, 15 Cal. 4th at 977; and *Tobacco II*, 46 Cal. 4th at 327).

## C.   BREACH OF EXPRESS WARRANTY

Today, every state in the United States has adopted the substantive laws of the Uniform Commercial Code ("UCC"), including Article 2, which sets forth the law on express warranties.  49 A.L.R.5th 1, *1a.  In California, as in all states, courts use a three-step approach to analyze a claim for breach of express warranty:

> First, the court determines whether the seller's statement amounts to "an affirmation of fact or promise" relating to the goods sold.  Second, the court determines if the affirmation or promise was "part of the basis of the bargain."  Finally, if the seller made a promise relating to the goods and that promise was part of the basis of the bargain, the court must determine if the seller breached the warranty.

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

*McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997) (citing *Keith v. Buchanan*, 173 Cal. App. 3d 13 (1985) (internal citations omitted).

"The law governing express warranties is clear.  A warranty is a contractual promise from the seller that the goods conform to the promise.  If they do not, the buyer is entitled to recover the difference between the value of the goods accepted by the buyer and the value of the goods had they been as warranted."  *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 830 (2006) (citing Cal. U. Com. Code, §§ 2313, subd. (1)(a), 2714, subd. (2)).

# V.
# STANDING

Plaintiff meets the standing requirements of the UCL, FAL, CLRA, and Article III of the U.S. Constitution.

## A.    PLAINTIFF HAS STANDING UNDER THE UCL AND FAL

A private action for relief under the UCL and FAL may be maintained only if the plaintiff "has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  In 2004, the UCL standing requirements were amended by Proposition 64.  "[W]here once private suits could be brought by 'any person acting for the interests of itself, its members[,] or the general public,' now private standing is  limited to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition."  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011) (internal citations omitted).

To satisfy Proposition 64, "a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim."  *Id.* at 322. The first is an injury in fact requirement, and the second is a causation requirement.

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

*Tobacco II*, 46 Cal. 4th at 315.  These standing requirements apply equally to the UCL and FAL.  *Kwikset*, 51 Cal. 4th at 321-22.

Here, Plaintiff has satisfied the pleading requirements for standing under the UCL and FAL.

### 1.   *Plaintiff Has Properly Pleaded Injury In Fact*

"[P]laintiffs who can truthfully allege they were deceived by a product's advertising into spending money to purchase the product … have 'lost money or property' within the meaning of Proposition 64 and have standing to sue."  *Kwikset*, 51 Cal. 4th at 317.  In *Kwikset*, the California Supreme Court found allegations similar to Plaintiff's allegations were sufficient to support standing under the UCL.  *Kwikset*, 51 Cal. 4th at 327 ("According to the second amended complaint, (1) Kwikset labeled certain locksets with 'Made in U.S.A.' or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise.  On their face, these allegations satisfy all parts of the section 17204 standing requirement . . . ."); *see also Von Koenig v. Snapple Beverage Corp*., 713 F. Supp. 2d 1066, 1078-79 (E.D. Cal. 2010) ("[T]he difference in price between the product received and its value" is sufficient, for pleading purposes, to allege "lost money or property" and finding "plaintiffs ha[d] sufficiently alleged that, due to defendant's labeling practices, they suffered a loss that benefitted defendants through more sales and higher profits" where plaintiffs alleged the product they received was worth less than they paid for it, the product contained high fructose corn syrup and was therefore unsatisfactory, and the defendant benefitted from plaintiffs' purchases by selling more drink products at a higher price).

Here, as in *Kwikset*, Plaintiff has met the injury in fact requirement for standing under Proposition 64.  As alleged, Neutrogena affirmatively misrepresented the "benefits" of the Products in order to convince the public and the Products' users to

16

purchase and use the Products, resulting in profits of millions of dollars or more to Neutrogena, all to the damage and detriment of the consuming public.  FAC at ¶ 39. Further, as alleged, the Products were and are worth less than the amount paid for them.  FAC at ¶¶ 108, 122, 139.  Indeed, Plaintiff paid more for the Products than the Products were worth and would not have purchased the Products if she had known that the advertising as described herein was false.  FAC at ¶ 52; Chow Decl. at ¶¶ 17-18.  Accordingly, Plaintiff meets the injury in fact requirement.

### 2. *Plaintiff Has Properly Pleaded Causation*

In *Tobacco II*, *supra*, the California Supreme Court defined the causation requirement for UCL and FAL standing as requiring the plaintiff to demonstrate actual reliance.  "[O]nly the named Plaintiff in a class action suit must show actual reliance on deceptive advertising."  46 Cal. 4th at 306.  "Actual reliance" is evaluated "in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions," but where the "plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." *Id*. at 306, 328.  In addition, an inference of reliance arises when there is a showing that a reasonable person would attach importance to a misrepresentation's existence or nonexistence in determining his choice of action.  *Id*. at 327.

Here, Plaintiff has sufficiently alleged actual reliance for UCL and FAL standing purposes.  Plaintiff alleged she "relied upon Defendant's claims and statements contained in its advertising and other promotional materials for the Products…" which were "prepared and approved by Neutrogena and its agents, disseminated through national advertising media, and designed to encourage men and women seeking assistance in preventing and repairing wrinkles, fine lines, age spots, or other unsightly and/or embarrassing signs of aging (like Plaintiff) to purchase the Products."  FAC at ¶¶ 23-24.  In particular, Plaintiff specified the advertising claims

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

she relied upon for her purchase of the Products during the Class period, such as "Rapid Wrinkle Repair," "Anti-Wrinkle Cream," "clinically proven," and "visible results in just one week," among other representations by Defendant.  FAC at ¶¶ 74-79.

Thus, as in *Kwikset* and *Tobacco II*, Plaintiff has standing under the UCL and FAL.

## B.  PLAINTIFF HAS STANDING UNDER THE CLRA

The CLRA requires a demonstration of actual reliance for standing purposes. Cal. Civ. Code § 1780(a).  Here, Plaintiff has sufficiently pleaded actual reliance. FAC at ¶¶ 23, 51, 84, 135.  Nothing further is required, and Plaintiff therefore meets the standing requirements of the CLRA.

## C.  PLAINTIFF HAS STANDING UNDER THE EXPRESS WARRANTY CLAIM

Plaintiff has properly alleged breach of express warranty and therefore has standing to bring her claim.  As alleged, Defendant expressly warranted on each and every box of the Products that said Products are "clinically proven" and can prevent and repair wrinkles, fine lines, age spots, or other signs of aging in just one week, among other warranties.  FAC at ¶ 142.  Defendant's claims constitute an affirmation of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise.  FAC at ¶ 143.  Plaintiff placed importance on Defendant's claims.  FAC at ¶ 144.  Plaintiff and the Class performed all conditions precedent to Defendant's liability under this contract.  FAC at ¶ 145. Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing products that can perform as advertised.  FAC at ¶ 146.  Lastly, as a result of Defendant's breach, Plaintiff and the Class have been damaged in the amount of the price of the Products they purchased.  FAC at ¶ 147.

Accordingly, Plaintiff has standing to pursue the express warranty claim.

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

**D.    PLAINTIFF HAS ARTICLE III STANDING**

Article III simply requires that "federal courts take jurisdiction only over 'definite and concrete, not hypothetical or abstract' cases and controversies." *Canatella v. State of California*, 304 F.3d 843, 852 (9th Cir. 2002) (quoting *Thomas v. Anchorage Equal Rights Comm.*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)). "Standing is a jurisdictional requirement, and a party invoking federal jurisdiction has the burden of establishing it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To demonstrate standing, plaintiffs must establish that: (1) they have suffered an "injury in fact," (2) there is a "causal connection between the injury and the conduct complained of," and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (1992); *see also Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. 2011).

The injury in fact requirement of the UCL and FAL standing overlaps with Article III standing requirements. "Injury in fact" is "one of the three 'irreducible minimum' requirements for federal standing under Article III" and the "text of proposition 64 establishes expressly that in selecting this phrase the drafters and voters intended to incorporate the established federal meaning." *Kwikset*, 51 Cal. 4th at 322. As noted above under the UCL and FAL analysis, Plaintiff has met the injury in fact requirement for Article III standing. By alleging actual reliance, Plaintiff has met the causation requirement for Article III standing, as well, and that there is "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 561.

Accordingly, Plaintiff has standing under Article III.

///
///
///
///

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

# VI.

# LEGAL ARGUMENT

## A.  LEGAL STANDARD FOR RULE 23 CLASS ACTIONS

"To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Comm., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).  Under Rule 23(a), the party seeking certification must demonstrate:

> (1)  the class is so numerous that joinder of all members is impracticable;
> (2)  there are questions of law or fact common to the class;
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 131 S. Ct. at 2548.  Rule 23(b) is satisfied if:

> (1)  prosecuting separate actions by or against individual class members would create a risk of:
> (A)  inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B)  adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
> (2)  the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> (3)  the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**B.    THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED**

"As the party seeking class certification," Plaintiff bears the burden of demonstrating that "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" are met. *Zinser v. Accufix Research Inst*., 253 F.3d 1180, 1186 (9th Cir. 2001) (citing *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992)). Courts engage in a "rigorous analysis" to determine whether the requirements of Rule 23 are satisfied. *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982)). In analyzing whether plaintiff has met her burden to show that these requirements are satisfied, the allegations of the plaintiff's complaint are taken as true. *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975).

Generally, courts do not make a preliminary inquiry regarding the merits. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). Ultimately, all that is necessary is enough information "to form a reasonable judgment on each requirement." *Blackie*, 524 F.2d at 901 n. 17. District courts have "broad discretion" to determine whether the Rule 23 requirements are met. *Zinser*, 253 F.3d at 1186; *In re Mego. Fin. Corp. Sec. Litig*., 213 F.3d 454, 461 (9th Cir. 2000); and *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977).

**1.    *Numerosity Is Satisfied***

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). "'Furthermore, '[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" *Charlebois v. Angels Baseball, LP*, 2011 U.S. Dist. LEXIS 71452, *13 (C.D. Cal. 2011) (quoting *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982)); and 1 Alba Cone & Herbert B. Newberg, *Newberg on Class Actions* § 3.3 (4th ed. 2002). Indeed, "[t]he

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

sheer number of potential class members justifies [a] Court's finding" of numerosity. *Tchoboian v. Parking Concepts, Inc.*, 2009 U.S. Dist. LEXIS 62122, *13 (C.D. Cal. 2009).

"As a general rule, classes of forty or more are considered sufficiently numerous." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008); *see also Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000); and *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-914 (9th Cir. 1964) ("'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.") (internal quotation marks and citation omitted).

In this case, all of the relevant considerations favor class certification. Although Plaintiffs have not yet had an opportunity to conduct thorough discovery, the total class is estimated to consist of "many thousands of persons throughout the United States and California," and is likely to be much larger.  FAC at ¶ 42.  Sales of the Products at issue based on the allegedly fraudulent advertising is estimated to be "part of a pattern or generalized course of conduct repeated on thousands of occasions daily."  FAC at ¶ 102.  In fact, Neutrogena's Finance Controller submitted a declaration in support of Neutrogena's removal petition in which he declared under penalty of perjury that "total nationwide retail sales of the [Products] have exceeded $5 million in the aggregate," where suggested retail prices ranged from $11.99 to $21.99.  Ex. 7 to Dubendorf Decl.

Assuming every unit of Product was sold at the highest suggested retail price of $21.99, the Class would consist of at least 227,376 members.  Further, it can be assumed that the Class is dispersed geographically across United States and California since the Products are offered in major retailers such as CVS.  Chow Decl. at ¶¶ 3, 5.  Thus, given the size and geographical diversity of the class members, the numerosity factor is satisfied.  *See Reynoso v. S. County Concepts*, 2007 U.S. Dist. LEXIS 95691,

*5-6 (C.D. Cal. 2007) ("The sheer number of potential class members justifies the Court's finding that the class in this case meets the numerosity requirement.").

Accordingly, Plaintiff meets the Rule 23(a)(1) numerosity requirement.

### 2.    *Commonality Is Satisfied*

Under Rule 23(a)(2), there must be questions of law and/or fact common to the proposed class.  The plaintiff only need allege that the class' injuries "depend upon a common contention" that is "capable of classwide resolution."  *Dukes*, 131 S. Ct. at 2551.  In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  "What matters to class certification . . . is not the raising of common questions– even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* (internal quotation marks and citation omitted).

Courts have described the showing needed to meet the commonality requirement as "minimal" and "not high." *See, e.g,. Hanlon*, 150 F.3d at 1020; and *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).  In assessing commonality, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.  Additionally, "[t]he commonality test is qualitative rather than quantitative – one significant issue common to the class may be sufficient to warrant certification." *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1225 (9th Cir. 2007), *overruled on other grounds by Dukes*, 131 S. Ct. 2541 (2011).

This case is based on uniform misrepresentations made prominently on every unit of Product sold to every Class member.  Accordingly, the claims of all Class members "stem from the same source." *Hanlon*, 150 F.3d at 1019-20.  In fact, this case can be boiled down to a few common questions of law and fact that can easily be

23

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

resolved according to classwide proof.  Among these common questions are the following:

- Does Defendant claim the Products are "clinically proven" to "visibly reduce the appearance of fine lines, wrinkles and age spots," among other representations, "in just one week?"

- Does Defendant possess competent and reliable scientific evidence to support its advertising claims?

- Is Defendant's advertising untrue or misleading within the meaning of the UCL and FAL?

- Is Defendant's advertising proscribed by the CLRA?

- Does Defendant's conduct constitute a breach of express warranty?

- Are Plaintiff and the Class entitled to injunctive relief and, if so, what is the nature of the injunctive relief to which they are entitled?

- Are Plaintiff and the Class entitled to restitution and/or damages and, if so, how much are they entitled to?

Thus, there is a common core of salient facts and legal issues.  *See, e.g,.* *Hanlon*, 150 F.3d at 1019; *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); and *Phillips v. Accredited Home Lenders Holding Co.*, 2007 U.S. Dist. LEXIS 59880 (C.D. Cal. 2007) (commonality met where claims arose from "same solicitations").

Accordingly, Plaintiff satisfies the Rule 23(a)(2) commonality requirement.

### 3.    *Typicality Is Satisfied*

"The typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Hanlon*, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(3)).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508; *see also*

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

24

1     *Dukes*, 474 F.3d at 1232.  Under Rule 23(a)'s "permissive standards, representative

2     claims are 'typical' if they are reasonably coextensive with those of absent class

3     members; they need not be substantially identical."  *Hanlon*, 140 F.3d at 1020*; see*

4     *also Falcon*, 457 U.S. at 157.  As to the representative, "[t]ypicality requires that the

5     named plaintiffs be members of the class they represent." *Dukes v. Wal-Mart Stores,*

6     *Inc.*, 603 F. 3d 571, 613 (9th Cir. 2010)), *overruled on other grounds by Dukes*, 131 S.

7     Ct. 2541 (2011)) (citing *Falcon,* 457 U.S. at 156).  The commonality, typicality,

8     adequacy of representation requirements "tend to merge" with each other.  *Dukes*, 131

9     S. Ct. at 2251 n.5 (citing *Falcon*, 457 U.S. at 157-58 n.13)

10        Ms. Chow is a member of the Class she seeks to represent.  Indeed, Ms. Chow's

11     claims are identical to those of each and every other member of the proposed Class.

12     Specifically, Ms. Chow purchased the Products in California, U.S.A., in reliance upon

13     Defendant's uniformly and broadly disseminated false and misleading advertising

14     claims, used the Products as directed, and did not obtain any of the advertised

15     benefits.  Chow Decl. at ¶¶ 3-15.  Ms. Chow's claims involve questions of law and

16     fact identical to those of all other Class members and arise from the same advertising

17     claims as those of all other Class members.  Further, Ms. Chow suffered the same

18     injury, i.e., the loss of the purchase price of the Products, and she therefore seeks

19     injunctive and monetary relief on behalf of all members of the proposed Class.

20        Accordingly, Ms. Chow meets the Rule 23(a)(3) typicality requirement.

21

22       **4.**     *Adequate Representation Is Satisfied*

23        Rule 23(a)(4) permits certification of a class action if  "the representative

24     parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

25     23(a)(4).  This factor requires: (1) that the proposed representative plaintiffs do not

26     have conflicts of interest with the proposed class, and (2) that plaintiffs are

27     represented by qualified and competent counsel.  *Hanlon*, 150 F.3d at 1020.

28     ///

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

### a.     Ms. Chow Is An Adequate Class Representative

Here, as discussed above, Ms. Chow's claims are identical to those of each and every other member of the proposed Class.  Thus, Ms. Chow does not have any conflicts of interest with any members of the proposed Class.  Indeed, Ms. Chow has taken an oath to fairly and adequately protect the interests of the Class.  Chow Decl. at ¶ 19.  Ms. Chow initiated this action in order to stop Defendant's false advertising of the Products so that consumers know what they are buying and what to realistically expect from the Products.  Chow Decl. at ¶ 20.  Likewise, Ms. Chow's counsel has no conflicts of interest with the Class.  Clarkson Decl. at ¶ 7.

Additionally, as required, Ms. Chow has personal experience with the claims of the lawsuit and is familiar with the underlying facts.  Chow Decl. at ¶ 1.  *See, e.g., Jimenez v. Domino's Pizza, Inc*., 238 F.R.D. 241, 249 (C.D. Cal. 2006) (class representatives deemed adequate where they had "personal experience with the claims" and "at the least a general familiarity with the case").

### b.     Red Law, LLP Is Qualified and Competent

Red Law, LLP ("Red Law") is a well-respected Santa Monica law firm with substantial relevant experience in class actions and other complex litigation.  In the past decade, Red Law attorneys have both prosecuted and defended, on behalf of both consumers and multi-national corporations, matters venued in both state and federal courts throughout California and the United States, involving amounts in controversy in the hundreds of millions of dollars.  Clarkson Decl. at ¶ 4.

Ryan J. Clarkson ("Clarkson"), one of Red Law's founding partners and managing partner of the firm's class action department, has substantial experience in class and collective action litigation.  Clarkson Decl. at ¶¶ 3-6.  Clarkson has been certified as class counsel in statewide and nationwide class action cases.  Clarkson Decl. at ¶ 5.  In this case, Red Law does not have any conflicts of interest in representing either Plaintiff or the proposed Class and will prosecute this matter

vigorously on their behalf.  Clarkson Decl. at ¶¶ 7-8.  Accordingly, Red Law is qualified to act as counsel for the Class.  Clarkson Decl. at ¶ 4.

In sum, Plaintiff meets the Rule 23(a)(4) adequate representation requirement.

## C.    THE REQUIREMENTS OF RULE 23(b)(2) AND 23(b)(3)ARE SATISFIED

In addition to establishing the elements of Rule 23(a), Plaintiffs must also satisfy one of the three subsections of Rule 23(b).  Fed. R. Civ. P. 23(b).  Plaintiff seeks certification under both Rule 23(b)(2) and Rule 23(b)(3).  In the Ninth Circuit, a class may be certified under both 23(b)(2) and 23(b)(3).  *Smith v. Univ. of Wash. Law School*, 233 F.3d 1188, 1196 (9th Cir. 2000).

### 1.    *Rule 23(b)(2) Is Satisfied*

Pursuant to Rule 23(b)(2), a class action is properly certified where the party against whom the relief is sought "has acted or refused to act on grounds generally applicable to a class of persons, thereby making appropriate final injunctive relief … with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  With respect to certification of a class under Rule 23(b)(2), "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole."  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).  This is true "[e]ven if some class members have not been injured by the challenged practice."  *Id*.

Moreover, although common issues predominate here (as discussed below), there is no predominance requirement under Rule 23(b)(2) as exists with class certification under Rule 23(b)(3).  *Id*.  "[C]lass actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages."  *Probe v. State Teachers' Retirement Sys.,* 780 F.2d 776, 780 (9th Cir. 1986); *see also Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1240 (9th Cir. 1998).  In determining the applicability of Rule 23(b)(2), district courts "examine the specific facts and circumstances of the case, focusing

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

1   predominantly on the plaintiff's intent in bringing the suit." *Dukes*, 474 F.3d at 1234.

2   The key question is whether the plaintiff's primary goal is to obtain injunctive relief,

3   not whether plaintiff will ultimately prevail or the possible size of the damages award.

4   *Id*. at 1234-35.

5          In this case, Defendant, by way of its false advertising campaign, has acted on

6   grounds generally applicable to the entire Class.  Indeed, Plaintiff, on behalf of herself

7   and all proposed members of the Class, complains of a standard and uniform practice

8   of fraudulent advertising of the Products by way of a uniform and consistent message

9   broadly disseminated to all members of the Class.  FAC at ¶¶ 71-72.  Further, Plaintiff

10  has established that her primary goal in bringing this action is to obtain injunctive

11  relief and stop Defendants' false and misleading label claims regarding the Products.

12  Chow Decl. at ¶ 20.  Plaintiff seeks to ensure that corrections are made to the

13  Products' advertising to accurately inform consumers what they are actually buying

14  and what they can realistically expect from the Products.  Chow Decl. at ¶ 20.

15         Notably, the damages component of the claims in this case, though substantial,

16  is secondary to the goal of stopping the false advertising.  *Compare Dukes*, 474 F.3d

17  at 1235 (suit by current and former employees for gender discrimination primarily

18  motivated by desire to protect those class members); and *Molski*, 318 F.3d at 950

19  (primary goal was to end practice of disability discrimination by owner and operator

20  of service stations).  Here, Plaintiff seeks an injunction to prevent further fraudulent

21  and unfair business practices by Defendant, as money damages alone would not afford

22  adequate and complete relief.  FAC at ¶¶ 87, 103, 118.

23         Accordingly, Plaintiff satisfies the requirements of Rule 23(b)(2).

24

25     **2.    *Rule 23(b)(3) Is Satisfied***

26         Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds

27  that the questions of law or fact common to class members *predominate* over any

28  questions affecting only individual members, and [2] that a class action is *superior* to

28

other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. R. 23(b)(3) (emphasis added). "Certification under Rule 23(b)(3) is proper 'whenever the actual interests of the parties can be served best by settling their differences in a single action." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 489 (C.D. Cal. 2006) (quoting *Hanlon*, 150 F.3d at 1022).

### a.   Common Issues Predominate Over Individual Issues for All Four Causes of Action

The Supreme Court has explained that predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)). Moreover, "[t]he fact a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all." *Mass. Mut.*, 97 Cal. App. 4th at 1292.

The Court rests its examination on the legal or factual questions of the individual class members. *Hanlon*, 150 F.3d at 1022. "Thus, the 'notion that the adjudication of common issues will help achieve judicial economy' is an integral part of the predominance test." *In re Wells Fargo Home Mortg.*, 571 F.3d 953, 958 (9th Cir. 2009) (quoting *Zinser*, 253 F.3d at 1189; and *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). Whether judicial economy will be served in a particular case turns on close scrutiny of "the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "The policy at the very core of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

1    class action mechanism is to overcome the problem that small recoveries do not

2    provide the incentive for any individual to bring a solo action prosecuting his or her

3    rights." *Amchem Prods., Inc.*, 521 U.S. at 617.

4         In this matter, common questions of fact and law heavily predominate over any

5    purported differences between proposed Class members.  Common issues

6    predominate because each of Plaintiff's four claims are based on the identical

7    misrepresentations Defendant uniformly makes on every single unit of the Products

8    sold to members of the proposed Class.  *See, e.g., Hanlon*, 150 F. 3d at 1022.  As

9    discussed above, the common questions posed by this case easily can be answered on

10   a classwide basis with common evidence.  In fact, there are few, if any, individual

11   issues among Class members relevant to the determination of Defendant's liability.

12   Further, adjudicating this matter as a class action would be consistent with the

13   scripture of the statute, as small individual recoveries likely would otherwise prohibit

14   prosecution of Plaintiff's rights.

15

16         **b.    Class Treatment Is A Superior Method of Adjudication**

17         A class action must be "superior to other available methods for the fair and

18   efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  "The superiority

19   inquiry under Rule 23(b)(3) requires determination of whether the objectives of the

20   particular class action procedure will be achieved in the particular case." *Hanlon*, 150

21   F.3d at 1023.  "This determination necessarily involves a comparative evaluation of

22   alternative mechanisms of dispute resolution." *Id.*

23         Here, each member of the Class pursuing a claim individually would burden the

24   judiciary and run afoul of Rule 23's focus on efficiency and judicial economy. *See*

25   *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The

26   overarching focus remains whether trial by class representation would further the

27   goals of efficiency and judicial economy.").  Moreover, litigation costs would likely

28   "dwarf potential recovery" if each Class member litigated individually.  *Hanlon*, 150

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

30

F.3d at 1023.  "[W]here the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action."  *Zinser*, 253 F.3d at 1199 n.2 (quoting *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (C.D. Cal. 1996)).

When examining a class that seeks to be certified under Rule 23(b)(3), the Court may consider:

> (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)  the likely difficulties in managing a class action.

Fed. R. Civ. R. 23(b)(3).  Analysis of the above factors supports class certification in this case.

First, the Class members will likely be interested in pursuing this matter as a class, rather than individually, because the Products cost between $11.99 and $21.99 each.  Ex. 7 to Dubendorf Decl.  Thus, individual damages claims of each Class member may not be substantial enough to warrant individual filings.  The primary policy of the Class action mechanism is to enable the collective vindication of the rights of numerous persons whose small claims may not be worth pursuing in individual actions.  *See Amchem Prods., Inc.*, 521 U.S. at 617.  Indeed, if hundreds of thousands or more plaintiffs pursued their claims individually, then they would clog the "courts with innumerable individual suits litigating the same issues repeatedly."  *Dukes*, 474 F.3d at 1244.

Second, although there is a somewhat related case pending in California state court (*Johns v. Neutrogena Corp.*, LASC Case No. BC481382), the proposed Class in *Johns* is narrower in scope[2] with respect to the products involved, claims involved,

---

[2] As set forth in Johns' complaint filed on March 22, 2012, *Johns* involves only Rapid Wrinkle Repair SPF 30 and Rapid Wrinkle Repair Night.

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

31

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

and geographic reach.  Specifically, unlike this case, *Johns* only involves UCL, CLRA, and express warranty claims, two of the six products involved here, and a California-only class, as opposed to a nationwide class.  Dubendorf Decl. at ¶ 11. Further, there are no known related individual actions.  Dubendorf Decl. at ¶ 11.  This confirms that a class action is needed because the small amount at issue for an individual plaintiff does not warrant an individual filing.  *Newberg on Class Actions*, § 4:30 (4th ed. 2002).

Third, in light of the broader scope of this case as compared to *Johns*, as well as the fact that the parties reside in the Central District of California (FAC at ¶¶ 20, 26), this Court is the most desirable forum in which to concentrate the litigation of the Class claims.  Lastly, this straightforward false advertising case does not present any unique challenges to managing it as a class action case.

Accordingly, Plaintiff satisfies the superiority and predominance requirements of Rule 23(b)(3).

## D.   THE COURT SHOULD CERTIFY A NATIONAL CLASS

Application of a single state's law to a nationwide class comports with due process where the state has a "significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that choice of [substantive state] law is not arbitrary or unfair."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) (citation omitted). This requirement creates only "modest restrictions" on the application of forum law to prevent the application of state substantive law "only casually or slightly related to the litigation."[3] *Id.* at 818-19.  "Under California law, once Plaintiff makes this showing that due process is satisfied, the burden shifts to Defendants to show that the laws of

---

[3] In *Shutts*, the Supreme Court took a two-step approach to analyzing whether state law comported with due process: (1) determining whether the state law conflicts "in any material way with any other law which could apply;" and (2) if such a conflict exists, determining whether the defendant had a significant contact or significant aggregation of contacts that created state interests. 472 U.S. at 816, 821-22.

another state should apply." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 538 (C.D. Cal. 2011) (citing *Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 921 (2001); and *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008)).

California courts have long recognized California's interest in entertaining claims by nonresident plaintiffs against resident defendants. *See, e.g., Hurtado v. Super. Ct.*, 11 Cal. 3d 574 (1974); and *Pecover v. Elec. Arts Inc.*, 2010 U.S. Dist. LEXIS 140632, 55-56 (N.D. Cal. 2010). In fact, under the UCL, California "has a clear and substantial interest in preventing fraudulent practices in this state and a legitimate and compelling interest in preserving a business climate free of . . . deceptive practice." *Estrella v. Freedom Fin. Network, LLC*, 2010 U.S. Dist. LEXIS 61236, *6 (N.D. Cal. 2010) (quoting *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 225 (1999)); *see also Diamond Multimedia Systems, Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1063-64 (1999) (no constitutional impediment to permitting non-Californians right of action under domestic statute because California has legitimate interest in "extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California"); and *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 615 (1987) (recognizing California's "fraud deterrence and consumer protection interests in applying its law to the claims of nonresident plaintiffs").

Defendant has significant contacts with California relating to the claims involved in this case, as demonstrated in several ways. First, since 1930, Defendant has commercialized cosmetic products like the Products from its headquarters in Los Angeles, California. FAC at ¶¶ 26-27. Because Defendant is headquartered in California, it stands to reason that Defendant would have negotiated retail contracts in California to sell the Products in California and made pricing decisions in California. Second, the challenged conduct occurred in California as Plaintiff purchased the Products in California, and it is estimated that approximately 12% to 18% of the fraudulently advertised Products were sold in California. FAC at ¶¶ 21-22; Clarkson

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

33

1    Decl. at ¶ 9.   Third, Neutrogena also placed its California address on the packaging of

2    each unit of Product.  Exs. 1-6 to Dubendorf Decl.

3        In very similar cases, California courts have routinely held that applying

4    California law to nationwide classes comports with the Due Process Clause.  *See, e.g.,*

5    *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008) (certifying

6    nationwide California-law class where defendant had California operations and a

7    significant number of class members resided in California); *Keilholtz v. Lennox*

8    *Hearth Prods. Inc.,* 268 F.R.D. 330 (N.D. Cal. 2010) (applying California law to

9    nationwide class where 19% of nationwide sales were in California); *In re Charles*

10   *Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 538 (N.D. Cal. 2009) (finding *Shutts* to be

11   satisfied when the defendant was headquartered in California and the challenged

12   conduct occurred there as well); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th

13   224 (2001) (trial court did not err in certifying the nationwide class because all class

14   members were similarly affected and significant contacts with California supported

15   subjecting Apple to California's consumer protection laws); and *Clothesrigger,* 191

16   Cal. App. 3d 605.

17       Accordingly, California law may be applied to this nationwide class without

18   violating Defendant's due process rights.

19

20   **E.   APPOINTMENT OF CLASS COUNSEL**

21       Rule 23(g) requires that a district court appoint class counsel for any class that

22   is certified.  *See* Fed. R. Civ. P. 23(g)(1)(A).  In appointing class counsel, Rule 23(g)

23   lists four factors for consideration: (1) the work counsel has done in identifying or

24   investigating potential claims in the action; (2) counsel's experience in handling class

25   actions or other complex litigation and the type of claims in the litigation; (3)

26   counsel's knowledge of the applicable law; and (4) the resources that counsel will

27   commit to representing the class.  Fed. R. Civ. P. 23(g).

28   ///

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

---

34

To date, Red Law has expended hundreds of hours and thousands of dollars prosecuting this case, including numerous client meetings, extensive interviews, expert consultation, substantial legal research, and thorough factual investigation. Red Law will commit all additional resources necessary to successfully prosecute this action. Clarkson Decl. at ¶ 8. Further, Red Law has substantial experience in handling–and vast knowledge of the applicable law regarding–class actions such as this. Clarkson Decl. at ¶¶ 4-6.

Thus, the Court should appoint Red Law as class counsel.

## VII.
## CONCLUSION

For the reasons stated herein, Plaintiff Mara Chow, on behalf of herself and the proposed Class, respectfully requests that the Court issue an order granting her motion for class certification pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) and appointing Red Law, LLP as class counsel pursuant to Fed. R. Civ. P. 23(g).

DATED: August 23, 2012                    **RED LAW, LLP**


  /s/ Ryan J. Clarkson
Ryan J. Clarkson
Edward D. Dubendorf
Attorneys for Plaintiff Mara Chow and
the Plaintiff Class

Red Law, LLP
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## PROOF OF SERVICE

The undersigned hereby certifies that the foregoing document was electronically filed and served through the Court's system upon the following:

Richard B. Goetz (SBN 115666)
Jaclyn Blankenship (SBN 267524)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
(213) 430-6000 (tel)
(213) 430-6407 (fax)

Matthew D. Powers (SBN 212682)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
(415) 984-8700 (tel)
(415) 984-8701 (fax)


This 23rd day of August, 2012.


/s/ Ryan J. Clarkson_____
Ryan J. Clarkson, Esq.
Attorney for Plaintiff and the
Proposed Plaintiff Class