1     RICHARD B. GOETZ (S.B. #115666)
     rgoetz@omm.com
2     ROBERT M. SWERDLOW (S.B. #200266)
     rswerdlow@omm.com
3     O'MELVENY & MYERS LLP
     400 South Hope Street
4     Los Angeles, California 90071-2899
     Telephone: (213) 430-6000
5     Facsimile: (213) 430-6407

6     MATTHEW D. POWERS (S.B. #212682)
     mpowers@omm.com
7     JILLIAN SOMERS (S.B. # 267544)
     jsomers@omm.com
8     O'MELVENY & MYERS LLP
     Two Embarcadero Center, 28th Floor
9     San Francisco, CA 94111-3823
     Telephone: (415) 984-8700
10    Facsimile: (415) 984-8701

11    Attorneys for Defendant
     Neutrogena Corporation

12

13             **UNITED STATES DISTRICT COURT**

14           **CENTRAL DISTRICT OF CALIFORNIA**

15               **WESTERN DIVISION**

16

17

18   MARA CHOW, individually and on behalf of all others similarly situated,

19            Plaintiff,

20        vs.

21   NEUTROGENA CORP., a Delaware Corporation; and DOES 1 through 100,

22   inclusive,

23            Defendants.

Case No. CV 12-04624 R (JCx)

**NEUTROGENA'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Hearing Date: November 19, 2012
Hearing time: 10:00 a.m.
Courtroom: 8

Pretrial Conference: Not set
Trial Date: Not set

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................. 1

II.   BACKGROUND FACTS ...................................................................... 2

    A.    The Six Products at Issue .......................................................... 2

    B.    Retinol ....................................................................................... 3

    C.    Independently Conducted Scientific Studies Confirm That the
        Products Deliver Benefits for Many Consumers ........................ 3

    D.    Different Consumers Have Different Reactions to Retinol ........ 5

    E.    Different Messages Were Used to Promote the Products ........... 5

    F.    Most of These Products Are Sold to Repeat Purchasers ........... 6

    G.    The National Advertising Division's Report .............................. 7

III.  PLAINTIFF HAS FAILED TO MEET HER EVIDENTIARY
     BURDEN TO SHOW THAT RULE 23'S REQUIREMENTS ARE
     SATISFIED .......................................................................................... 7

IV.   STATE LAW VARIATIONS PRECLUDE CERTIFICATION OF A
     NATIONWIDE UNDER RULE 23(B)(2) OR (B)(3) ......................... 10

    A.    A Class Cannot Be Certified Where the Claims of Putative Class
        Members Must Be Assessed Under the Laws of Multiple States ... 11

    B.    California's "Governmental Interest" Test Requires the
        Application of the Law of Each Consumer's State of Purchase ....... 12

        1.    Different States' Laws Vary in Material Ways ................ 12

        2.    Each State Has a Strong Interest in Applying Its Own
            Laws ....................................................................... 16

        3.    Other States' Interests Would Be Impaired ................... 16

        4.    District Court Decisions Following Mazza ..................... 17

V.    PLAINTIFF'S 23(B)(2) CLASS FAILS ............................................ 18

VI.   PLAINTIFF'S 23(B)(3) CLASS FAILS BECAUSE COMMON
     ISSUES DO NOT PREDOMINATE OVER INDIVIDUALIZED
     ISSUES .............................................................................................. 21

    A.    Each Cause of Action Requires Proof of Causation or Reliance ..... 23

    B.    Whether Any Consumer Was Injured Is An Individualized Issue ..... 24

    C.    Plaintiff Cannot Show Economic Injury Using Class-Wide Proof .... 27

    D.    Different Class Members Were Exposed to Different Messages ....... 28

    E.    An Inference of Reliance or Materiality Would Be Inappropriate ..... 31

VII.  PLAINTIFF'S PROPOSED CLASS SUFFERS FROM A HOST OF
     OTHER PROBLEMS .......................................................................... 32

VIII. PLAINTIFF CHOW IS NOT TYPICAL OR ADEQUATE ................. 34

IX.   CONCLUSION .................................................................................... 35

# TABLE OF AUTHORITIES

**Page**

## CASES

*Agostino v. Quest Diagnostics Inc.*,
256 F.R.D. 437 (D.N.J. 2009) ........................................................................... 11

*Akkerman v. Mecta Corp.*,
152 Cal. App. 4th 1094 (2007) ................................................................... 22, 33

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
2012 WL 3762440 (S.D. Cal. Aug. 28, 2012) ................................................ 22

*Arnold v. United Artists Theatre Circuit, Inc.*,
158 F.R.D. 439 (N.D. Cal. 1994) .................................................................... 19

*Baby Neal ex rel. Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994) ................................................................................ 19

*Baranco, Inc. v. Bardshaw*,
456 S.E.2d 592 (Ga. App. 1995) ..................................................................... 13

*Baughn v. Honda Motor Co.*,
727 P.2d 655 (Wash. 1986) .............................................................................. 14

*Block v. Abbott Labs.*,
2002 WL 485364 (N.D. Ill. Mar. 29, 2002) .................................................... 12

*Block v. Major League Baseball*,
65 Cal. App. 4th 538 (1998) ............................................................................ 28

*Bolin v. Sears, Roebuck & Co.*,
231 F.3d 970 (5th Cir. 2000) ........................................................................... 21

*Bonlender v. Am. Honda Motor Co.*,
286 F. Appx. 414 (9th Cir. 2008) .................................................................... 11

*Boucher v. First Am. Title Ins. Co.*,
2012 WL 3023316, No. C10–199RAJ (W.D. Wash. July 24, 2012) ................ 10

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) ........................................................................... 33

*Brownfield v. Bayer Corp.*,
2009 U.S. Dist. LEXIS 63057 (E.D. Cal. July 2, 2009) .................................. 23

*Bruno v. Eckhart Corp.*,
280 F.R.D. 540 (C.D. Cal. 2012) ..................................................................... 18

**TABLE OF AUTHORITIES**
(continued)

Page

*Cambridge Lane, LLC v. J-M Manufacturing Co.*,
  2012 U.S. Dist. LEXIS 43533 (C.D. Cal. Mar. 15, 2012) ..................................18

*Campion v. Old Republic Home Prot. Co.*,
  272 F.R.D. 517 (S.D. Cal. 2011)...................................................................passim

*Caro v. Proctor & Gamble Co.*,
  18 Cal. App. 4th 644 (1993)................................................................................32

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  2011 WL 159380 (N.D. Cal. Jan. 10, 2011), *aff'd on other grounds*,
  2012 WL 1131526 (9th Cir. Apr. 5, 2012)..........................................................35

*Cattie v. Wal-Mart Stores, Inc.*,
  504 F. Supp. 2d 939 (S.D. Cal. 2007) .................................................................23

*Cholakyan v. Mercedes-Benz USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012) ..........................................................8, 19, 20, 21

*Cipollone v. Liggett Grp., Inc.*,
  893 F.2d 541 (3d Cir. 1990), *aff'd in part & rev'd in part*, 505 U.S.
  504 (1992)............................................................................................................15

*City of San Jose v. Superior Court*,
  12 Cal. 3d 447 (1974)..........................................................................................33

*Clay v. Am. Tobacco Co.*,
  188 F.R.D. 483 (S.D. Ill. 1999)...........................................................................12

*Cohen v. DIRECTV, Inc.*,
  178 Cal. App. 4th 966 (2009)......................................................................passim

*Colgan v. Leatherman Tool Grp., Inc.*,
  135 Cal. App. 4th 663 (2006)........................................................................27, 28

*Colpinto v. Esquire Deposition Servs.*,
  2011 WL 913251 (C.D. Cal. Mar. 8, 2011) ........................................................33

*Cortez v. Purolator Air Filtration Prods. Co.*,
  23 Cal. 4th 163 (2000).........................................................................................27

*Crawford v. Honig*,
  37 F.3d 485 (9th Cir. 1994)..................................................................................21

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) .............................................................................................35

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Daughtrey v. Ashe,*
   413 S.E.2d 336 (Va. 1992) ........................................................................ 14

*Davis v. Powertel, Inc.,*
   776 So. 2d 971 (Fla. App. 2000) ............................................................. 14

*Debbs v. Chrysler Corp.,*
   810 A.2d 137 (Pa. Super. 2002) ............................................................. 13

*Doninger v. Pac. Nw. Bell, Inc.,*
   564 F.2d 1304 (9th Cir. 1977) ................................................................... 8

*Drimmer v. WD-40 Co.,*
   2007 WL 2456003 (S.D. Cal. Aug. 24, 2007) ...................................... 20

*Edgar v. MITE Corp.,*
   457 U.S. 624, 102 S. Ct. 2629, 73 L. Ed. 2d 269 (1982) ..................... 17

*Edwards v. First Am. Corp.,*
   251 F.R.D. 449 (C.D. Cal. 2007) ............................................................ 21

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) .................................................................................. 34

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) .............................................................. 19, 20

*Feitelberg v. Credit Suisse First Boston, LLC,*
   134 Cal. App. 4th 997 (2006) .................................................................. 33

*Fieldstone Co. v. Briggs Plumbing Prods., Inc.,*
   54 Cal. App. 4th 357 (1997) .................................................................... 16

*Fischer v. Mead Johnson Labs,*
   341 N.Y.S.2d 257 (N.Y.A.D. 1973) ...................................................... 15

*Flory v. Silvercrest Indus. Inc.,*
   633 P.2d 383 (Ariz. 1981) ....................................................................... 16

*Ford Motor Co. v. Sperau,*
   708 So. 2d 111 (Ala. 1997) ..................................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,*
   528 U.S. 167 (2000) .................................................................................. 35

**TABLE OF AUTHORITIES**
(continued)

Page

*Gartin v. S & M NuTec LLC,*
    245 F.R.D. 429 (C.D. Cal. 2007) ........................................................ 8

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ........................ 8, 22, 34

*Gianino v. Alacer Corp.,*
    2012 U.S. Dist. LEXIS 32261 (C.D. Cal. Feb. 27, 2012) ............................ 13, 17

*Gonzales v. Comcast Corp.,*
    2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ........................................... 32, 33

*Gonzalez v. Proctor & Gamble Co.,*
    247 F.R.D. 616 (S.D. Cal. 2007) .............................................. 19, 21, 31

*Granberry v. Islay Invs.,*
    9 Cal. 4th 738 (1995) ............................................................. 32, 33

*Halprin v. Ford Motor Co.,*
    420 S.E.2d 686 (N.C. App. 1992) ..................................................... 15

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ........................................................ 34

*Harbor Point Homeowners' Ass'n, Inc. ex rel. Bd. of Dirs. v. DJF
Enters., Inc.,*
    697 S.E.2d 439 (N.C. App. 2010) .................................................... 15

*Horowitz v. Stryker Corp.,*
    613 F. Supp. 2d 271 (E.D.N.Y. 2009) ................................................ 15

*Horvath v. LG Elecs. Mobilecomm U.S.A., Inc.,*
    2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13, 2012) .............................. 18

*Howell v. Midway Holdings, Inc.,*
    362 F. Supp. 2d 1158 (D. Ariz. 2005) ............................................... 14

*Hunter v. Croysdill,*
    169 Cal. App. 2d 307 (1959) ........................................................ 33

*In re Bridgestone/Firestone Tire Prods. Liab. Litig.,*
    288 F.3d 1012 (7th Cir. 2002) .................................................. passim

*In re Flash Memory Antitrust Litig.,*
    2010 WL 2332081 (N.D. Cal. June 9, 2010) ........................................... 27

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

# TABLE OF AUTHORITIES
(continued)

**Page**

*In re Google Adwords Litig.*,
   2012 WL 28068 (N.D. Cal. Jan. 5, 2012) .........................................25, 26, 27, 28

*In re Hitachi Television Optical Block Cases*,
   2011 WL 9403 (S.D. Cal. Jan. 3, 2011) ............................................................. 13

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir.2008) ................................................................................. 8

*In re Intel Corp. Microprocessor Antitrust Litig.*,
   2010 WL 8591815 (July 28, 2010) ..................................................................... 32

*In re Paxil Litig.*,
   218 F.R.D. 242 (C.D. Cal. 2003) ....................................................................... 21

*In re St. Jude Med., Inc.*,
   425 F.3d 1116 (8th Cir. 2005) ........................................................................... 13

*In re Tobacco II*,
   46 Cal. 4th 298 (2009) ..................................................................13, 23, 24, 26

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009) .................................................................23, 31, 32

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pract. & Prod. Liab.
   Litig.*,
   2012 WL 865041 (S.D. Ill. Mar. 13, 2012) ..................................................26, 27

*Izzarelli v. R.J. Reynolds Tobacco Co.*,
   117 F. Supp. 2d 167 (D. Conn. 2000) ................................................................ 14

*Johns v. Bayer Corp.*,
   2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ......................................................... 35

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*,
   178 Cal. App. 4th 830 (2009) .................................................................28, 30, 31

*Kamar v. RadioShack Corp.*,
   375 Fed. Appx. 734 (9th Cir. 2010) ................................................................... 10

*Keegan v. Am. Honda Motor Co.*,
   2012 WL 2250040 (C.D. Cal. June 12, 2012) ...................................12, 13, 14, 15

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) .................................................................................... 27

- vi -

**TABLE OF AUTHORITIES**
(continued)

Page

*Kuehn v. Stanley,*
    91 P.3d 346 (Ariz. App. 2004) ...............................................................13

*Lafayette Stabilizer Repair, Inc. v. Mach. Wholesalers Corp.,*
    750 F.2d 1290 (5th Cir. 1985)...............................................................15

*Lanzarone v. Guardsmark Holdings, Inc.,*
    2006 WL 4393465 (C.D. Cal. Sept. 7, 2006)........................................22

*Larsen v. Trader Joe's Co.,*
    No. 3:11-cv-05188-SI (N.D. Cal. June 14, 2012) ................................35

*LeClercq v. Michael,*
    88 Cal. App. 2d 700 (1948)...................................................................33

*Lozano v. AT&T Wireless Servs., Inc.,*
    504 F.3d 718 (9th Cir. 2007)...........................................................19, 21

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ..............................................................................35

*Mahfood v. QVC, Inc.,*
    2008 WL 5381088 (Sept. 22, 2008).......................................................27

*Mass. Mut. Life Ins. Co. v. Superior Court,*
    97 Cal. App. 4th 1282 (2002)..........................................................23, 31

*Maybank v. S.S. Kresge Co.,*
    273 S.E.2d 681 (N.C. 1981) ..................................................................15

*Mazur v. eBay Inc.,*
    257 F.R.D. 563 (N.D. Cal. 2009) .....................................................27, 33

*Mazza v. American Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012)..........................................................passim

*McCann v. Foster Wheeler LLC,*
    48 Cal. 4th 68 (Cal. 2010) ....................................................................17

*Mlejnecky v. Olympus Imaging Am., Inc.,*
    2011 WL 1497096 (E.D. Cal. Apr. 19, 2011).......................................35

*Moncada v. Allstate Ins. Co.,*
    471 F. Supp. 2d 987 (N.D. Cal. 2006)..............................................23, 28

**TABLE OF AUTHORITIES**
(continued)

Page

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.,*
   107 Cal. App. 4th 1336 (2003)................................................................9

*Occidental Land v. Superior Court,*
   18 Cal. 3d 355 (Cal. 1976) .................................................................31

*Offshore Rental Co. v. Cont'l Oil Co.,*
   583 P.2d 721 (Cal. 1978)....................................................................17

*P & F Constr. Corp. v. Friend Lumber Corp.,*
   575 N.E.2d 61 (Mass. App. Ct. 1991)..................................................15

*Petersen v. Talisman Sugar Corp.,*
   478 F.2d 73 (5th Cir. 1973) ................................................................19

*Pfizer, Inc. v. Superior Court,*
   182 Cal. App. 4th 622 (2010)..................................................28, 30, 31

*Quezada v. Loan Ctr. of Cal., Inc.,*
   2009 WL 5113506 (E.D. Cal. 2009) ....................................................32

*Randleman v. Fidelity Nat. Title Ins. Co.,*
   646 F.3d 347 (6th Cir. 2011)...............................................................10

*Rikos v. Procter & Gamble Co.,*
   2012 WL 641946 (S.D. Ohio Feb. 28, 2012)........................................14

*Riley v. Nev. Supreme Court,*
   763 F. Supp. 446 (D. Nev. 1991) ........................................................19

*Sanders v. Apple, Inc.,*
   672 F. Supp. 2d 978 (N.D. Cal. 2009)............................................15, 24

*Sanders v. Johnson & Johnson, Inc.,*
   2006 U.S. Dist. LEXIS 35881 (D.N.J. May 31, 2006) .........................12

*Seaside Resorts, Inc. v. Club Car, Inc.,*
   416 S.E.2d 655 (S.C. App. 1992)........................................................15

*Sebago, Inc. v. Beazer E., Inc.,*
   18 F. Supp. 2d 70 (D. Mass. 1998)......................................................14

*Sevidal v. Target Corp.,*
   189 Cal. App. 4th 905 (2010)...................................................24, 28, 30

**TABLE OF AUTHORITIES**
(continued)

Page

*Slaven v. BP Am., Inc.,*
190 F.R.D. 649 (C.D. Cal. 2000) ................................................................22

*Spence v. Glock, Ges.m.b.H.,*
227 F.3d 308 (5th Cir. 2000) ....................................................................16

*Stanley v. Bayer Healthcare LLC,*
2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) ..............................................9

*Stearns v. Select Comfort Retail Corp.,*
763 F. Supp. 2d 1128 (N.D. Cal. 2010) ....................................................15

*Stephenson v. Capano Dev., Inc.,*
462 A.2d 1069 (Del. 1983) ........................................................................14

*Sterns v. Ticketmasters Corp.,*
655 F.3d 1013 (9th Cir. 2011) ..................................................................26

*Steroid Hormone Prod. Cases,*
181 Cal. App. 4th 145 (2010) ....................................................................31

*Stutman v. Chem. Bank,*
731 N.E.2d 608 (N.Y. 2000) ......................................................................14

*Suzuki v. Hitachi Global Storage Techs., Inc.,*
2007 U.S. Dist. LEXIS 51605 (N.D. Cal. July 16, 2007) ........................23

*Szabo v. Bridgeport Machs., Inc.,*
249 F.3d 672 (7th Cir. 2001) ......................................................................8

*Teamsters Local 445 v. Bombardier, Inc.,*
546 F.3d 196 (2d Cir. 2008) ........................................................................8

*Tucker v. Pac. Bell Mobile Servs.,*
208 Cal. App. 4th 201 (2012) ........................................................24, 25, 31

*Util. Consumers' Action Network v. Sprint,*
259 F.R.D. 484 (S.D. Cal. 2009) ..............................................................20

*Valente v. Sofamor, S.N.C.,*
48 F. Supp. 2d 862 (E.D. Wis. 1999) ........................................................13

*Vasquez v. Superior Court,*
4 Cal. 3d 800 (Cal. 1971) ....................................................................31, 32

- ix -

## TABLE OF AUTHORITIES
(continued)

Page

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ................................................... passim

*Wash. Mut. Bank v. Superior Court,*
    24 Cal. 4th 906 (2001) ........................................................................ 12, 16, 17

*Weinstat v. Dentsply Int'l, Inc.,*
    180 Cal. App. 4th 1213 (2010) ............................................................... 14, 23

*Wilens v. TD Waterhouse Grp., Inc.,*
    120 Cal. App. 4th 746 (2003) ................................................................. 24, 28

*Williams v. Beechnut Nutrition,*
    185 Cal. App. 3d 135 (1986) .................................................................. 23, 28

*Williams v. Oberon Media, Inc.,*
    2010 WL 8453723 (C.D. Cal. April 19, 2010) ............................................... 22

*Zachery v. Texaco Exploration & Prods.,*
    185 F.R.D. 230 (W.D. Tex. 1999) ................................................................ 21

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ............................................................... passim

## **STATUTES**

815 Ill. Comp. Stat. 505/2S & 10a ........................................................................ 14

Alaska Stat. § 45.50.531(a)(i) .............................................................................. 14

Alaska Stat. § 45.50.535 ...................................................................................... 14

Ariz. Rev. Stat. Ann. § 12-541(5) ......................................................................... 13

Ark. Code Ann. § 4-88-204 ................................................................................. 14

Cal. Bus. & Prof. Code § 17208 ........................................................................... 13

Cal. Bus. & Prof. Code § 17500 ........................................................................... 13

Cal. Civ. Code § 1783 .......................................................................................... 13

Cal. Civ. Proc. Code § 338(d) .............................................................................. 13

Cal. Com. Code § 2313 ........................................................................................ 14

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

Cal. Com. Code § 2313(1)(a) ......................................................................23

4

Cal. Com. Code § 2313, U.C.C. cmt. 3 ......................................................14

5

Colo. Rev. Stat. § 6-1-105(1)(e), (g), (u)....................................................13

6

Colo. Rev. Stat. Ann. §§ 6-1-113(2)(a) ......................................................14

7

Ga. Code Ann. § 10-1-399............................................................................13

8

Ind. Code Ann. § 24-5-05-4(a) ....................................................................13

9

La. Rev. Stat. Ann. § 51:1409(A).................................................................13

10

Mich. Comp. Laws Ann. § 445-905(1) ........................................................14

11

Miss. Code Ann. § 75-24-15(4) ...................................................................13

12

Miss. Code Ann. § 78-24-15(1) ...................................................................14

13

N.C. Gen. Stat. § 25-2-313 cmt. 3 ..............................................................15

14

N.J. Stat. Ann. § 56:8-2 ...............................................................................13

15

N.M. Stat. Ann. § 57-12-10(E).....................................................................14

16

Ohio Rev. Code Ann. § 1345-09(A)(B) .......................................................14

17

Or. Rev. Stat. § 6469-638(6) ........................................................................13

18

R.I. Gen. Laws § 9-1-13 ...............................................................................13

19

S.D. Codified Laws § 37-24-31.....................................................................14

20

Va. Code Ann. § 59.1-204.1(A) ...................................................................13

21

**OTHER AUTHORITIES**

22

Manual for Complex Litigation (4th ed.) ....................................................19

23

Restatement (Second) of Conflict of Laws § 148 .......................................17

24

S. Rep. No. 109-14 (2005)............................................................................16

25

**RULES**

26

Fed. R. Civ. P. 23.....................................................................................1, 7, 8

- xi -

# TABLE OF AUTHORITIES
(continued)

**Page**

Fed. R. Civ. P. 23(a) ........................................................................21

Fed. R. Civ. P. 23(a)(2)......................................................................9

Fed. R. Civ. P. 23(b)........................................................................11

Fed. R. Civ. P. 23(b)(2) ...................................................11, 18, 19, 21

Fed. R. Civ. P. 23(b)(2) Advisory Comm. Notes (1966 Amendments)...................11

Fed. R. Civ. P. 23(b)(3) .......................................................11, 19, 21, 33

Fed. R. Civ. P. 23(b)(3)(D)..................................................................34

# I.   INTRODUCTION

This supposedly "straightforward false advertising case" is anything but. Plaintiff's motion must be denied because she is wrong on the facts, wrong on the law, and has failed to satisfy her burden under Rule 23. In an effort to avoid proving that individual issues do not predominate, Plaintiff takes extreme legal and factual positions that are unsupported by any evidence. Retinol and retinoids have been studied for ***decades***; their benefits in reducing the visible signs of aging in skin are well-established. Double-blind clinical studies on these very products (Neutrogena's Healthy Skin Anti-Wrinkle ("HSAW") and Rapid Wrinkle Repair ("RWR") products) show they can provide substantial benefits. Yet Plaintiff's entire motion rests on bare assertions—supported only by allegations—that no "scientific studies 'prove' the efficacy of retinol" and that every user "suffered a common injury" by "paying for a worthless product." (Mot. at 1, 8.)

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Plaintiff has not done so. She never identifies the common evidence she will use to prove her class claims—much less evidence proving the requirements of Rule 23 are satisfied—and several key arguments in her motion rely on mere allegations. Her motion should be denied on that basis alone.

Plaintiff's motion also suffers from a host of legal and factual problems that preclude certification of any of her proposed classes. Although Plaintiff seeks to apply California law to a nationwide class, she fails even to mention the Ninth Circuit's holding in *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594. A nationwide class is thus unworkable and must be rejected,

1   and her Rule 23(b)(2) class also fails—monetary relief is hardly "incidental" here.

2       Equally important, Plaintiff's asserted predominance of "common issues"

3   ignores the practical reality of any trial on her claims.  These claims cannot be

4   proven on a class-wide basis and individual issues will overwhelmingly

5   predominate.  Consumers buy these products because of their ***visible*** benefits.

6   Thus, anyone who uses the products knows ***exactly*** what benefits they provide.

7   **Redacted**

8   (*See* Declaration of Jennifer Nelson

9   ("Nelson Decl.") ¶¶ 22 (HSAW Creams), 26 (All RWR Products).)  A second (or

10   third) purchase is very unlikely to have been the result of misleading advertising,

11   and shows they received the benefit of their bargain the first time.  Such consumers

12   suffered no injury, have no damages, and Plaintiff does not—and cannot—tailor her

13   proposed class to exclude them.  Certification must be denied because (among other

14   reasons) the proposed class encompasses many unharmed members.

15       Plaintiff also offers no feasible way to calculate damages on a class-wide

16   basis, and reliance and materiality cannot be presumed here.  Plaintiff's proposed

17   class is not ascertainable, and she offers no plan for managing this case.  Indeed,

18   Plaintiff's own extensive history of skin problems and treatments, including severe

19   facial rashes from toxic mold and—at age 32—five Botox injections in the past two

20   years, shows the problems a trial of each individual's claims will present.

21   **II.**   **BACKGROUND FACTS**[1]

22      **A.**   **The Six Products at Issue**

23       Two of the products—which Plaintiff bought in "early 2011"—are from

24   Neutrogena's popular Healthy Skin Anti-Wrinkle line, and have been on the market

25   since the late 1990s.[2]  Healthy Skin Anti-Wrinkle Cream SPF 15 ("HSAW SPF

26

27   [1] Although some of the facts and evidence set out below impact the merits of

28   Plaintiff's claims, they also bear directly on issues critical to class certification.
  [2] Declaration of Renee Yang ("Yang Decl.") ¶ 2.

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

15"), is a moisturizing cream that, as its name suggests, includes sunscreen, and Healthy Skin Anti-Wrinkle Cream Night ("HSAW Night") is for use at night. The other products, which Plaintiff purchased in "late 2011," are from the Rapid Wrinkle Repair line, launched in February 2011.[3] They include a day cream (with sunscreen) ("RWR Day"), and night ("RWR Night") and eye creams ("RWR Eye").[4] They also include a serum ("RWR Serum") which Plaintiff never bought.[5]

### B.    Retinol

All of these products contain retinol, a form of vitamin A. When applied to the skin, retinol is absorbed by skin cells and converted to retinoic acid, which stimulates production of collagen, elastin, hyaluronic acid, and new skin cells, and speeds up skin cell turnover.[6] Decades of research have proven retinol to be effective, and today it is used in many cosmetic products to reduce the appearance of fine lines, age spots, and other signs of aging in the skin.[7]

Redacted

*Id.*

Other ingredients in the products, including glycerin, can also improve users' skin.[8]

Redacted

[9]

### C.    Independently Conducted Scientific Studies Confirm That the Products Deliver Benefits for Many Consumers

A mountain of scientific studies from the past four decades shows that retinol

---

[3] Chow Decl. ¶ 5; Yang Decl. ¶ 3.
[4] Declaration of Sidney Hornby ("Hornby Decl.") ¶ 2.
[5] *Compare* First Amended Complaint ("FAC"), D.E. 13, ¶ 76 *with* Declaration of Matthew D. Powers ("Powers Decl."), Ex. 1 [Pl.'s Dep. Excerpts] at 131:9-14.
[6] Powers Decl., Ex. 2 [Expert Report of Leslie Baumann M.D.] at 5-9.
[7] *Id.*, Ex. 2 [Baumann Report] at p. 10.
[8] Powers Decl., Ex. 2 [Baumann Report] at 11-14.
[9] Hornby Decl. ¶ 5.

1   can visibly reduce wrinkles and other signs of aging.[10]  In addition to that publicly

2   available data, Neutrogena also commissioned clinical studies to evaluate the

3   products at issue here.  Those studies were conducted by Dr. James Leyden, a

4   medical doctor and professor of Dermatology at the University of Pennsylvania.[11]

5

6

7

8

9

10

11

12

13

14                                    Redacted

15

16

17

18

19

20

21

22

23

24

25   _____

26   [10] Powers Decl., Ex. 2 [Baumann Report] at 4-13.
     [11] Hornby Decl. ¶ 7-8, 16.
27   [12] Id. ¶ 17, Ex. 1 at NTG00001477-78.
     [13] Leyden Decl. ¶¶ 15-16 and Ex. 1 [Study 3899]; Hornby Decl. ¶ 18; Hornby
28   Decl., Ex. 1 [Summary] at p. 1.
     [14] Leyden Decl. ¶ 20 and Ex. 2 [Study 4239]; Hornby Decl. ¶¶ 16, 19.

1
2
3    **Redacted**
4

5    **D.    Different Consumers Have Different Reactions to Retinol**

6    While the vast majority of retinol users will see improvement in their skin

7    over time, the extent, nature, and timing of those improvements can vary.[16]  How an

8    individual responds will be affected by many factors, including genetics (skin type),

9    lifestyle (tobacco use), and environment (sun exposure; air pollution; hot/humid vs.

10   cool/dry).[17]

11
12   **Redacted**
13                                                                              [19]

14   **E.    Different Messages Were Used to Promote the Products**

15   Despite Plaintiff's assertion that the marketing of these products was

16   "uniform," the particular statements seen by each consumer vary considerably.

17   Most of the claims Plaintiff challenges are located only on the back of the products'

18   packages.  Yet according to Plaintiff's own allegations, the "vast majority of

19   consumers" did not read the back of the package before buying the products.  (FAC

20   ¶ 90.)  Moreover, Neutrogena has used different media and ads to promote the

21   RWR products at different times.  Neutrogena ran four print ads, each with a

22   different message.  The initial ads stated that "100% of women" in a study saw

23   "noticeable results."  (Yang Decl., Ex. 1.)  Later ads say the products are "clinically

24

25   [15] Leyden Decl. Ex. 5; Hornby Decl. ¶ 15.  These are only some of the results that
     have been shown by the many studies of these products.
26   [16] Powers Decl., Ex. 2 [Baumann Report] at 11-18.
     [17] Id., Ex. 2 [Baumann Report] at 14-18.
27   [18] Leyden Decl., Ex. 4 [Study 6949] at Table at p. 8.
                                    **Redacted**
28   Id., Ex. 4 [Study 6949] at Table at p. 10.

                                                          NEUTROGENA'S OPPOSITION TO
                                                          MOTION FOR CLASS CERTIFICATION
                                                          CV 12-4624 R

1  proven" to "smooth" or "visibly reduce" wrinkles in one week. (*Id.*, Exs. 2-4.)  The

2  statements in the television ads also varied in content and over time.  (*Compare*,

3  *e.g., id.* Ex. 5 (2011 ad) ("fastest retinol formula available") with Ex. 13 (2012 ad)

4  ("visibly reduce" wrinkles)).  Neutrogena also advertised the products on "banner

5  ads" on Internet websites, none of which include any statements Plaintiff

6  challenges.  (*Id.*, Ex. 10.)  Instead, they note only that the products have the "fastest

7  retinol formula available."  (*Id.*)  And Neutrogena's website provides even more

8  information about the RWR products.  (*Id.*, Ex. 11.)

9  Redacted

10      Like many companies, Neutrogena tracks data about its products and

11  customers, including the number of consumers who buy products on more than one

12  occasion.  That data is very important to Neutrogena because it indicates consumer

13  satisfaction with its products.  The repeat purchaser data for these products is

14  striking, and shows that

15

16

17

18

19                              Redacted

20

21

22

23

24

25  [20] Nelson Decl. ¶¶ 22 (HSAW), 26 (RWR).                                    *Id*

26                              Redacted

27  *Id.* at ¶ 26.                                              *Id.* ¶¶ 14-15.

28  [22] *Id.* ¶¶ 18 (RWR Day), 16 (RWR Night), 24 (RWR Creams).  Data regarding
    RWR Eye specifically was not available.  *Id.* ¶ 14.

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

**Redacted**

### G. The National Advertising Division's Report

In her Motion, Plaintiff cites a report from the National Advertising Division of the Council of Better Business Bureaus ("NAD")[23] and claims that the "NAD concluded that none of the testing proffered by Neutrogena supported Neutogena's claims . . . ." (Mot. at 9.) That is false. In the actual report, which Plaintiff did not submit, the NAD concluded Neutrogena's studies showed "significant win[s]" for its products against popular competitors: "a head-to-head comparison versus Estée Lauder Perfectionist Wrinkle Lifting Serum ... showed a *very significant win* for the Neutrogena product" and "Neutrogena Rapid Wrinkle Repair, when compared across studies, *has a significantly faster onset of action* than either product."[24] The NAD's criticism was only over *one* RWR print ad which, in the NAD's view, suggested that wrinkles would disappear completely after one week (a claim Neutrogena has never made).[25] **Redacted** **Redacted** [26] and the class includes members who only purchased the product after the change. Notably, the NAD *agreed* that the RWR products have "the fastest retinol formula available."[27]

### III. PLAINTIFF HAS FAILED TO MEET HER EVIDENTIARY BURDEN TO SHOW THAT RULE 23'S REQUIREMENTS ARE SATISFIED

Plaintiff's motion must be rejected because she has failed to offer evidence demonstrating that the requirements of Rule 23 are satisfied. At a minimum, Plaintiff was required to identify the common evidence she will use at trial to prove her supposed common issues. *See, e.g., Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

---

[23] The NAD is an industry group that seeks to bolster confidence in advertising by working with companies to ensure they have support for their advertisements.
[24] Hornby Decl., Ex. 6 [NAD Report] at 2 (emphasis added).
[25] *Id.*, Ex. 6 [NAD Report] at 6.
[26] Hornby Decl. ¶ 26.
[27] Hornby Decl., Ex. 6 [NAD Report] at 6 (emphasis added).

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

147, 158-59, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ("Without any specific presentation identifying the questions of law or fact that were common … it was error … to presume that respondent's claim was typical of other claims. . . ."); *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 435 (C.D. Cal. 2007) ("plaintiff must provide evidence … that Rule 23(b)(3) has been satisfied; mere promises that issues relating to predominance or superiority can be overcome are inadequate."). Plaintiff did not do so. Instead, she argues that "in analyzing whether plaintiff has met her burden to show that the [] requirements [of Rule 23] are satisfied, the allegations of the plaintiff's complaint are taken as true" and "[g]enerally, courts do not make a preliminary inquiry regarding the merits." (Mot. at 21.) That is not the law. Plaintiff must submit *evidence* showing that Rule 23 is satisfied. *Dukes*, 131 S. Ct. at 2551.[28] Indeed, as many courts have held, Plaintiff must prove Rule 23's requirements have been met by a preponderance of the evidence.[29]

    Although Plaintiff identifies seven purportedly common issues (*e.g.*, "Does Defendant possess . . . evidence supporting its adverting claims"; "Is Defendant's advertising untrue or misleading within the meaning of the UCL and FAL?"), those issues all boil down to two basic questions: (1) does each product offer *any* users *any* of the advertised benefits, and (2) are the class members entitled to any monetary relief "and, if so, how much are they entitled to?" (Mot. at 24.) To be "common," the "claims must depend upon a common contention . . . capable of

---

[28] *See also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001); *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977) (certification denied where plaintiffs supplied "meager support" for certification and the only affidavits were from counsel); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) ("The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 . . . .").
[29] *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008) ("Rule 23 findings must be made by a preponderance of the evidence"); *Teamsters Local 445 v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008) (same); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 551 (C.D. Cal. 2012) (noting that no "Ninth Circuit authority . . . directs use of a preponderance standard" but applying that standard "[b]ecause that is the general standard of proof used in civil cases").

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1    classwide resolution—which means that determination of its truth or falsity will

2    resolve an issue that is central to the validity of each one of the claims in one

3    stroke." *Dukes*, 131 S. Ct. at 2551.  Although for purposes of Rule 23(a)(2) a

4    single common question will do, "'[w]hat matters . . . is not the raising of common

5    'questions'—even in droves—but, rather the capacity of a classwide proceeding to

6    generate common answers apt to drive the resolution of the litigation.'" *Id.*

7           Here, the evidence is overwhelming that these products can and do provide a

8    variety of benefits.  (Powers Decl., Ex. 2 [Baumann Report] at 11-14.)  Many

9    individualized factors can affect the degree to which consumers experience those

10   benefits, including environment (humidity and sun exposure), use, and skin type.

11   (*Id.* at 14-18.)                     Redacted

12   ▇Redacted▇ proves that many derive substantial benefits from them.  (Nelson

13   Decl. ¶¶ 22, 26.)  Yet other than ***allege*** the products are "worthless," Plaintiff does

14   nothing to show how she will prove that any of the statements she challenges are

15   false or which members of the class have been injured, much less how she will do

16   so with common evidence.  *See Nat'l Council Against Health Fraud, Inc. v. King*

17   *Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1342 (2003) (plaintiff has the burden to

18   prove advertising claims are misleading).

19          Plaintiff cannot simply claim she will prove a lack of scientific

20   substantiation.  *See Stanley v. Bayer Healthcare LLC*, 2012 WL 1132920 (S.D. Cal.

21   Apr. 3, 2012).  "Private individuals may not bring an action demanding

22   substantiation for advertising claims" under the UCL or CLRA.  *Id.* at *3.  Because

23   an "alleged lack of substantiation does not render claims false and misleading under

24   the UCL or CLRA," Plaintiff must prove, with evidence, that the claims violate

25   those statutes—asserting that claims are "actually false because they lack[ed]

26   proper scientific substantiation" is ***not*** enough.  *Id.* at *4-*5.  Plaintiff has submitted

27   literally no proof on that issue or shown how she will prove such claims at trial.

28          In fact, Plaintiff's proposed trial would be a "heads they win, tails you lose"

proceeding for Neutrogena.  Defeating Plaintiff's claim that the products are "worthless" (*e.g.*, by showing that the products have benefits for some (or many) users) would not resolve the class' claims—proving that the products have benefits for many does not necessarily mean that *no* individual has any claim.  And Plaintiff cannot fix that problem by limiting the class to those who are entitled to relief because they did not receive the expected benefits—doing so would create an impermissible "failsafe"[30] class.  *See, e.g., Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (class that only included those "entitled to relief," was a failsafe class because "[e]ither the class members win or, by virtue of losing, they are not in the class"); *Boucher v. First Am. Title Ins. Co.*, 2012 WL 3023316, at *4 (W.D. Wash. July 24, 2012) ("Fail-safe classes are impermissible because they make it impossible for a defendant to prevail against the class.").

Plaintiff's boilerplate assertions of "common issues" are unsupported by the evidence, and her overly simplistic proposed class trial on whether "Defendant's advertising [is] untrue" will do little (if anything) to "generate common answers apt to drive the resolution of the litigation."  *Dukes*, 131 S. Ct. at 2551 (italics omitted).  Plaintiff's motion should be denied on that basis alone.

## IV.   STATE LAW VARIATIONS PRECLUDE CERTIFICATION OF A NATIONWIDE UNDER RULE 23(b)(2) OR (b)(3)

Plaintiff's proposed nationwide class will require the Court to apply the laws of all 50 states, dwarfing any claimed common issues.[31]  The Ninth Circuit's recent

---

[30] "[A] fail-safe class . . . is simply a way of labeling the obvious problems that exist when the class … is defined in a way that precludes membership unless … liability … is established.  When the class is so defined, once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class.  That is palpably unfair to the defendant, and is also unmanageable-for example, to whom should the class notice be sent?" *Kamar v. RadioShack Corp.*, 375 Fed. Appx. 734, 735-36 (9th Cir. 2010).

[31] *See Zinser*, 253 F.3d at 1189 ("differences in state law will compound the disparities among class members from the different states."); *In re Bridgestone/Firestone Tire Litig.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules.").

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1   decision in *Mazza v. American Honda* is directly on point, and the state-law-

2   variations analysis that Plaintiff failed to undertake confirms that a nationwide class

3   is unworkable here. *Mazza*, 666 F.3d at 590-94; *Zinser*, 253 F.3d at 1186–90; *In re*

4   *Bridgestone/Firestone*, 288 F.3d at 1018 ("[s]tate consumer-protection laws vary

5   considerably, and courts must respect these differences rather than apply one state's

6   law to sales in other states with different rules.").

### A.   A Class Cannot Be Certified Where the Claims of Putative Class Members Must Be Assessed Under the Laws of Multiple States

8   A class may not be certified where, as here, the relevant claims and defenses

9   will be controlled by many states' laws. Plaintiff's claims arise exclusively under

10  state law and are brought on behalf of claimants in all 50 states and the District of

11  Columbia—*i.e.*, in every jurisdiction where the products are sold. (Yang Decl. at ¶

12  19.) Because "[n]o class action is proper unless all litigants are governed by the

13  same legal rules," *In re Bridgestone/Firestone*, 288 F.3d at 1015, courts have

14  repeatedly refused to certify nationwide classes where the relevant state laws varied

15  from state to state. *E.g.*, *Mazza*, 666 F.3d at 594; *Zinser*, 253 F.3d at 1186-90;

16  *Bonlender v. Am. Honda Motor Co.*, 286 F. Appx. 414, 414-15 (9th Cir. 2008).

17  While an analysis of state-law variations is usually performed in the context

18  of "predominance" under Rule 23(b)(3), whether there is a commonly applicable

19  legal regime also impacts each subsection of Rule 23(b). The Advisory Committee

20  Notes for the 1966 Amendments to Rule 23(b)(2), for example, observe that

21  certification may be had when "settling the legality of the behavior with respect to

22  the class as a whole is appropriate." Rule 23(b)(2) Adv. Com. Notes (1966

23  Amendments). When a court cannot determine the legality of the defendant's

24  conduct as to all class members without considering the laws of each jurisdiction, a

25  (b)(2) class cannot be certified. In fact, "numerous courts have concluded that state

26  law variations create overwhelming obstacles to certification under Rule 23(b)(2)."

27  *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 466-70 (D.N.J. 2009) (denying

28

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1    certification of Rule 23(b)(2) class based on state law variations).[32]

2        **B.    California's "Governmental Interest" Test Requires the**
         **Application of the Law of Each Consumer's State of Purchase**
3
4        This court must look to the forum state's choice of law rules to determine the

5    controlling substantive law, and under California's choice of law rules, "California

6    law may only be used on a classwide basis if 'the interests of other states are not

     found to outweigh California's interest in having its law applied,'" as determined
7
     by a three-step "governmental interest" test. *Mazza*, 666 F.3d at 589-90 (*quoting*
8
9    *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (2001)).  That test first

10   considers whether the "law in each potentially concerned state . . . materially differs

11   from the law of California." *Wash. Mut.*, 24 Cal. 4th at 919.  If it does, the court

12   must determine whether each other state has an interest "in having its own law

13   applied," and, then, which state's interests would be "'more impaired' if its law

     were not applied." *Id.* at 920; *Mazza*, 666 F. 3d at 590.  Here, just as in *Mazza*,
14
     Plaintiff's claims cannot be certified because "each class member's consumer
15
16   protection claim should be governed by the consumer protection laws of the

17   jurisdiction in which the transaction took place." *Id.* at 594.  *See also Keegan v.*

18   *Am. Honda Motor Co.*, 2012 WL 2250040, at *37-40 (C.D. Cal. June 12, 2012)

19   (same conclusion for express warranty).

20       **1.    Different States' Laws Vary in Material Ways**

21       ***Consumer Protection Statutes****.* As many courts have held, state consumer

22   protection laws vary in material ways, including on statutes of limitations, scienter,

23   ───────────────────────
     [32] *See also Sanders v. Johnson & Johnson, Inc.*, 2006 U.S. Dist. LEXIS 35881, at
24   *10-20 (D.N.J. May 31, 2006) ("These individualized factual issues, coupled with
     the individual application of different state laws . . . would swamp any common
25   issues of fact between the class members."); *Block v. Abbott Labs.*, 2002 WL
     485364, at *8 (N.D. Ill. Mar. 29, 2002) ("[s]ignificant variations in applicable state
26   laws, combined with overwhelming factual variations in each class member's case,
     preclude any finding that the interests of the class members are cohesive and
27   homogenous."); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 495 (S.D. Ill. 1999)
     ("[e]ven if the necessary prerequisites had been met, the claim is totally
28   unmanageable as a class action because of the variations in state law . . . .").

1 reliance and causation, the availability of class actions, damages, statutory

2 penalties, and punitive damages. *See, e.g., Gianino v. Alacer Corp.*, 2012 U.S. Dist.

3 LEXIS 32261, at \*6-7, \*11-12 (C.D. Cal. Feb. 27, 2012); *Mazza*, 666 F.3d at 590-

4 91; *In re Hitachi Television Optical Block Cases*, 2011 WL 9403, at \*6 (S.D. Cal.

5 Jan. 3, 2011); *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005);

6 *Bridgestone/Firestone*, 288 F.3d at 1018.[33]

7       The statutes of limitations here differ substantially from those in other states,

8 and claims that might be timely here would be barred elsewhere.[34]  In addition,

9 California allows class actions, while several states do not, *see* La. Rev. Stat. Ann.

10 § 51:1409(A); Miss. Code Ann. § 75-24-15(4), and although "[the UCL and

11 CLRA] have no scienter requirement . . . many other states' consumer protection

12 statutes do require scienter."[35]  Again, those differences matter in this case, since

13 Plaintiffs will be unable to show any intent to mislead on Neutrogena's part.

14 Standards for reliance and causation—which can "spell the difference between the

15 success and failure of the claim"—also vary.  *Keegan*, 2012 WL 2250040, at \*33.

16 In many states, reliance may be required,[36] or, like California, the named plaintiff

17 must prove reliance.  *In re Tobacco II*, 46 Cal. 4th 298, 298 (2009).  But in others,

18

19

---

20 [33] A complete analysis of the variations in state consumer protection and express warranty laws is set out in Appendices 1 and 2.

21 [34] *Cf.* Cal. Civ. Code § 1783 (CLRA—three years from date of improper practice); Cal. Bus. & Prof. Code § 17208 (UCL—four years); Cal. Bus. & Prof. Code

22 § 17500; Cal. Civ. Proc. Code § 338(d) (FAL—three years from discovery of facts constituting fraud) *with* Or. Rev. Stat. § 6469-638(6) (one year from discovery of

23 deceptive practice); Va. Code Ann. § 59.1-204.1(A) (two years); Ariz. Rev. Stat. Ann. § 12-541(5) (one year from discovery); *and see* R.I. Gen. Laws § 9-1-13 (ten

24 years); *see also Keegan*, 2012 WL 2250040, at \*335-36 (material differences in state consumer protection statutes of limitation).

25 [35] *Mazza*, 666 F.3d at 591.  *See, e.g.*, Colo. Rev. Stat. § 6-1-105(1)(e), (g), (u) (knowingly); N.J. Stat. Ann. § 56:8-2 (intent for omissions); *Debbs v. Chrysler*

26 *Corp.*, 810 A.2d 137, 155 (Pa. Super. 2002) (knowledge or reckless disregard).

27 [36] *E.g.*, *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. App. 2004); Ga. Code Ann. § 10-1-399; *Baranco, Inc. v. Bardshaw*, 456 S.E.2d 592, 594 (Ga. App. 1995); Ind. Code

28 Ann. § 24-5-05-4(a); *Valente v. Sofamor*, S.N.C., 48 F. Supp. 2d 862, 874 (E.D. Wis. 1999).

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1   it is not,[37] and, as discussed below, whether each class member relied on any

2   allegedly false statement will be a critical issue in this case.  Remedies also differ—

3   while the UCL allows only restitution, consumers in other states can recover actual,

4   punitive, and sometimes statutory damages, depending on the circumstances.[38]

5         ***Express Warranty Claims***.  States' express warranty laws also vary.  *See*

6   *Keegan*, 2012 WL 2250040, at *37-41 (material differences in New York,

7   California, and North Carolina warranty laws); *Rikos v. Procter & Gamble Co.*,

8   2012 WL 641946 (S.D. Ohio Feb. 28, 2012) (rejecting nationwide class under

9   California choice of law rules because of differences in warranty laws).[39]  In

10  California, reliance may be presumed, but any presumption can be overcome.  *E.g.*,

11  Cal. Com. Code § 2313; *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213,

12  1229 (2010); Cal. Com. Code § 2313, U.C.C. cmt. 3.  In Virginia, reliance may not

13  be required.  *Daughtrey v. Ashe*, 413 S.E.2d 336, 338-39 (Va. 1992).  In

14  Washington, the plaintiff must have been aware of the representations.  *Baughn v.*

15  *Honda Motor Co.*, 727 P.2d 655, 669 (Wash. 1986).  New Jersey shifts the burden

16  to defendant to show the plaintiff *disbelieved* the ad.  *Cipollone v. Liggett Grp.,*

17  *Inc.*, 893 F.2d 541, 569 n.34 (3d Cir. 1990), *aff'd in part & rev'd in part*, 505 U.S.

18

19  [37] *E.g.*, *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973-74 (Fla. App. 2000); *Sebago,*
    *Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70, 103 (D. Mass. 1998) (Mass. law);

20  *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000); *Stephenson v.*
    *Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983); *Izzarelli v. R.J. Reynolds*

21  *Tobacco Co.*, 117 F. Supp. 2d 167, 176 (D. Conn. 2000).
    [38] *See, e.g.*, 815 Ill. Comp. Stat. 505/2S & 10a. (statutory and compensatory

22  damages); S.D. Codified Laws § 37-24-31 (actual/compensatory only); Miss. Code
    Ann. § 78-24-15(1) (compensatory only); Colo. Rev. Stat. Ann. §§ 6-1-113(2)(a)

23  (only actual damages in class action); *Ford Motor Co. v. Sperau*, 708 So. 2d 111
    (Ala. 1997) (punitive damages); Alaska Stat. §§ 45.50.531(a)(i), 45.50.535

24  (punitive damages, but 50% go to the state); *Howell v. Midway Holdings, Inc.* 362
    F. Supp. 2d 1158, 1165 (D. Ariz. 2005) (punitive damages for wanton, reckless,

25  "spite" or "ill will."); Ark. Code Ann. § 4-88-204 (punitive damages for disabled
    and elderly); Mich. Comp. Laws Ann. § 445-905(1) (punitive damages for

26  persistent and knowing, but cannot exceed $25,000); N.M. Stat. Ann. § 57-12-
    10(E) (limited statutory damages for named plaintiff without actual damages); Ohio

27  Rev. Code Ann. § 1345-09(A)(B) (allowed in individual action).
    [39] A complete analysis of state express warranty laws is set out in Appendix 2.

28

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

504 (1992).  North Carolina may require reliance, but with lesser proof if affirmations of fact were made during negotiations.  *Harbor Point Homeowners' Ass'n, Inc. ex rel. Bd. of Dirs. v. DJF Enters., Inc.*, 697 S.E.2d 439 (N.C. App. 2010); N.C. Gen. Stat. § 25-2-313 cmt. 3.  And New York can require reliance. *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 286 (E.D.N.Y. 2009).  Thus, applying California law could, for example, allow residents of New York or Washington to bring claims that might be barred in their home states.

Pre-suit notice requirements differ as well.  *E.g.*, *Keegan*, 2012 WL 2250040, at *39 (pre-suit notice materially different in New York, California and North Carolina).  In California, notice is not required if the consumer did not deal directly with the manufacturer.  *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142-43 (N.D. Cal. 2010); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009).  South Carolina requires notice to the immediate seller, *Seaside Resorts, Inc. v. Club Car, Inc.*, 416 S.E.2d 655, 663 (S.C. App. 1992), and New York does not require notice for consumer transactions.  *Fischer v. Mead Johnson Labs*, 341 N.Y.S.2d 257, 258 (N.Y.A.D. 1973).  But in North Carolina, notice may be required for manufacturers and sellers—the question appears unsettled.  *See Halprin v. Ford Motor Co.*, 420 S.E.2d 686, 688-89 (N.C. App. 1992).  The timing of notice also varies—in Massachusetts a three-and-a-half-month delay barred suit, *P & F Constr. Corp. v. Friend Lumber Corp.*, 575 N.E.2d 61, 64 (Mass. App. 1991), but in Florida, six months was held to not be untimely, *Lafayette Stabilizer Repair, Inc. v. Mach. Wholesalers Corp.*, 750 F.2d 1290, 1294 (5th Cir. 1985), and in North Carolina, a delay of three years was held to be acceptable.  *Maybank v. S.S. Kresge Co.*, 273 S.E.2d 681, 685 (N.C. 1981).  Since most of these products were sold by third-party retailers, these variations could have a significant impact on many class members' claims—particularly where notice to the seller is required.

Finally, privity rules also differ.  California may not require privity when consumers relied on product labels or ads, *Fieldstone Co. v. Briggs Plumbing*

1    *Prods., Inc.*, 54 Cal. App. 4th 357, 369 n.10 (1997), but without showing privity,

2    for example, in Arizona, warranty claims for retail purchases could be barred.

3    *Flory v. Silvercrest Indus. Inc.*, 633 P.2d 383, 387 (Ariz. 1981).  Thus, a consumer

4    in Arizona who bought the product at Walgreens could not recover without proving

5    privity—an essential requirement in that state.

6           **2.**      **Each State Has a Strong Interest in Applying Its Own Laws**

7         Since the conflicts of law at issue here are material, the court must

8    "determine what interest, if any, each state has in having its own law applied to the

9    case." *Wash. Mut.*, 24 Cal. 4th at 920.  Consumer protection laws reflect important

10    policy judgments by each state about the conduct permitted within its borders, and

11    "each state has a strong interest in applying its own consumer protection laws to

12    [the] transactions [that take place within its borders]"—even if another state's law

13    might be more favorable to consumers. *Mazza*, 666 F.3d at 591-92.  Instead,

14    "[e]ach state has an interest in setting the appropriate level of liability for

15    companies conducting business within its territory" and it is error to "discount[] or

16    not recogniz[e] each state's valid interest in shielding out-of-state businesses from

17    what the state may consider to be excessive litigation." *Id.* at 592.[40]  In fact, "[t]he

18    importance of federalism when applying choice of law principles to class action

19    certification is reinforced by the Class Action Fairness Act," a "key purpose" of

20    which was to prevent courts from dictating the "substantive laws of other states."

21    *Id.* at 593 (*quoting* S. Rep. No. 109-14, at 61 (2005)).

22           **3.**      **Other States' Interests Would Be Impaired**

23         The last prong of the choice-of-law analysis requires the court to determine

24    "which state's interest would be more impaired if its policy were subordinated to

25

26    ――――――――――――――――

[40] *See also Lewallen v. Medtronic USA, Inc.*, 2002 WL 31300899, at *5 (N.D. Cal.

27    Aug. 28, 2002); *Zinser*, 253 F.3d at 1187 ("every state has an interest in having its law applied to its resident claimants."); *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308,

28    314 (5th Cir. 2000) (states have an interest in choosing the breadth of recovery under their laws); *Bridgestone/Firestone*, 288 F.3d at 1018.

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

the policy of the other state." *Mazza*, 666 F.3d at 590; *Offshore Rental Co. v. Cont'l Oil Co.*, 583 P.2d 721, 726 (Cal. 1978); *Wash. Mut.*, 24 Cal. 4th at 920.  Courts do not weigh the worthiness of the respective laws, "but rather . . . decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97 (Cal. 2010).  Here, almost all of the relevant conduct took place outside California.  Consumers viewed the ads, bought the products, and used them in their home states.  And although Neutrogena is headquartered in Los Angeles, the RWR advertising was developed by a New York-based team at Roberts & Langer.  Two of the products (HSAW Night and RWR Serum) are manufactured in Europe, █

██████████ Redacted ██████████ (Yang Decl. ¶ 18-19.)

California recognizes that with respect to regulating conduct, "the place of the wrong has the predominant interest," and the location of the wrong is the "state where the last event necessary to make the actor liable occurred." *See Mazza*, 666 F.3d at 593. *See also* Restatement (Second) of Conflict of Laws § 148 (key to conflicts-of-law analysis is the location where plaintiff receives representation and acts in reliance).  Here, that state is each consumer's state of residence, which has a very strong interest in regulating conduct within its borders and applying its own laws to its own residents' purchases.  *Mazza*, 666 F.3d at 594; *Gianino*, 2012 U.S. Dist. LEXIS 32261, at *15-16.  California's interest in applying its law to foreign transactions, on the other hand, is attenuated—especially here, where "the place of the wrong" is each consumer's home state. *See Edgar v. MITE Corp.*, 457 U.S. 624 (1982); *Gianino*, 2012 U.S. Dist. LEXIS 32261, at *14-15; *Mazza*, 666 F.3d at 594.

### 4.    District Court Decisions Following *Mazza*

After *Mazza*, many courts have refused to apply California law to nationwide classes. *See Gianino*, 2012 U.S. Dist. LEXIS 32261 at *6-7, 11 (rejecting nationwide class because of "significant variations in the states' consumer

1  protection" laws); *Horvath v. LG Elecs. Mobilecomm U.S.A., Inc.*, 2012 U.S. Dist.

2  LEXIS 19215, at *5-11, 25-29 (S.D. Cal. Feb. 13, 2012) (dismissing out-of-state

3  plaintiffs because applicable laws differed).  And the few courts that have approved

4  such classes after *Mazza* are distinguishable.  In *Bruno v. Eckhart Corp.*, 280

5  F.R.D. 540, 542-43 (C.D. Cal. 2012), for example, the court refused to decertify a

6  class on the grounds that *Mazza* was not a material change in the law and the

7  defendant failed to analyze the other states' laws.  *Id.* at 543-44.  And in *Cambridge*

8  *Lane, LLC v. J-M Manufacturing Co.*, 2012 U.S. Dist. LEXIS 43533, at *17-19

9  (C.D. Cal. Mar. 15, 2012), the defendant did not make a "sufficient showing" of

10  state law variations, but the court noted it would likely decertify upon such a

11  showing.  *Id.* at *18-19.  Neutrogena has provided a detailed analysis of the

12  material variations in states' consumer protection and breach of warranty laws, both

13  above and in Appendices 1 and 2.  Since almost every element of every claim

14  reflects substantial differences on basic elements of claims and recovery, Plaintiff's

15  proposed nationwide classes must be rejected.  *See Mazza*, 666 F.3d at 594.

16  **V.    PLAINTIFF'S 23(b)(2) CLASS FAILS**

17  Rule 23(b)(2) is limited.  It applies only if "the party opposing the class has

18  acted or refused to act on grounds generally applicable to the class, thereby making

19  appropriate final injunctive relief or corresponding declaratory relief with respect to

20  the class as a whole." Fed. R. Civ. P. 23(b)(2).  Plaintiff argues Rule 23(b)(2)

21  applies because an injunction is supposedly her "primary goal." (Mot. at 27-28.)

22  But Rule 23(b)(2) does not apply simply because "a plaintiff class, at its option,

23  combines its monetary claims with a request—even a 'predominating request'—for

24  an injunction." *Dukes*, 131 S. Ct. at 2559.  Instead, "Rule 23(b)(2) applies only

25  where a single injunction or declaratory judgment would provide relief to each

26  member of the class. . . . [I]t does not authorize class certification when each class

27  member would be entitled to an individualized award of monetary damages." *Id.* at

28  2557.  Seeking damages *at all* "cast[s] doubt on the propriety of certifying a class

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

under Rule 23(b)(2)." *Cholakyan*, 281 F.R.D. at 560.  Damage claims can ***only*** be certified under Rule 23(b)(2) if the monetary relief is "merely incidental" to the claim for an injunction. *Zinser*, 253 F.3d at 1195.[41]

Plaintiff's claims are a far cry from a typical Rule 23(b)(2) case—e.g., seeking class-wide injunctions to redress uniform group injuries: violations of civil rights, the First Amendment, due process, or denial of government benefits.[42] Unlike such cases, the claims here cannot be certified because (1) an injunction will not benefit the entire class, and (2) the monetary relief is not incidental. First, an injunction will ***not*** provide relief to "each member of the class." *Dukes*, 131 S. Ct. at 2557; *Zinser*, 253 F.3d at 1195.  Plaintiff seeks an order enjoining "false and misleading statements" and requiring corrective advertising "to prevent Neutrogena from fraudulently inducing future consumers into spending money on the Products." (FAC ¶¶ 87, 89.)  Such an injunction will do nothing for past purchasers who have no intention of buying again.[43]  They have nothing to gain from

---

[41] Due process requires that the protections of Rule 23(b)(3) (notice and an opportunity to opt out) be provided in a class action in which monetary damages are sought, even if the injunctive claim is predominant. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986-87 (9th Cir. 2011) (citing *Dukes*, 131 S. Ct. at 2557-58). And, Rule 23(b)(2)'s assumption that the class is homogeneous and cohesive "can be destroyed by showing individualized issues as to liability or remedy." Manual for Complex Litigation at 261 (4th ed.); *see also Lewallen*, 2002 WL 31300899, at *3 ("Even though [Rule 23(b)(2)] does not contain a predominance and superiority requirement … cohesiveness is lacking where individual issues predominate.").

[42] *See, e.g., Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 451-52 (N.D. Cal. 1994) (disabled theatergoers sought compliance with the ADA); *Petersen v. Talisman Sugar Corp.*, 478 F.2d 73, 83 (5th Cir. 1973) (labor union and religious employees sought declaratory judgment allowing public to communicate with workers); *Riley v. Nev. Supreme Court*, 763 F. Supp. 446, 452-53 (D. Nev. 1991) (challenging death penalty procedures); *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (systemic failure to provide child welfare services).

[43] *See, e.g., Cholakyan*, 281 F.R.D. at 559 (former vehicle owners would not benefit from injunction); *Dukes*, 131 S. Ct. at 2560 (former employees would not benefit from injunctive relief); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 729 (9th Cir. 2007) (denying 23(b)(2) certification on UCL and CLRA claims for deceptive billing practices); *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 626-27 (S.D. Cal. 2007) (denying 23(b)(2) certification on UCL, CLRA, and breach of express warranty claims that hair products were falsely represented as effective in strengthening hair).

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1    injunctive relief and "cannot make an end-run around Rule 23(b)(3) by tacking on a

2    request for an injunction." *Cholakyan*, 281 F.R.D. at 561; *see also Drimmer v.*

3    *WD-40 Co.*, 2007 WL 2456003 at *5 (S.D. Cal. Aug. 24, 2007) ("[t]he class

4    members, by definition, already purchased the products" and "an injunction

5    prohibiting the allegedly false statements can only benefit *future* purchasers.")

6    (italics original).  Here, consumers can directly observe these products' effects;

7    "corrective" advertising would do nothing for past purchasers—or for past users

8    who *do* plan to buy again, who already know exactly how well the products work

9    *for them*.  The *only* individuals who might benefit are future purchasers who have

10    never used the products—i.e., who are *not* members of the putative class.

11        Second, the monetary relief Plaintiff seeks is hardly incidental.  *See Zinser*,

12    253 F.3d at 1195.  As discussed above, the benefits to the class of an injunction are

13    illusory at best.  And the monetary relief sought is extensive:  restitution, actual

14    damages, punitive damages, attorneys' fees, and prejudgment interest.  (FAC,

15    Prayer for Relief.)  Even the equitable relief is aimed at avoiding *damages*.  (FAC

16    ¶¶ 87, 89.)  Where, as here, "[t]he equitable relief requested is to prevent further

17    actions by the Defendant[] that would create further similar monetary damages. . .

18    nationwide class certification under Fed. R. Civ. P. 23(b)(2) [is] inappropriate."

19    *Util. Consumers' Action Network v. Sprint*, 259 F.R.D. 484, 489 (S.D. Cal. 2009).

20        Plaintiff cannot superficially structure her case around a claim for injunctive

21    relief if, in reality, the relief sought would require individualized remedy

22    determinations.  *Cholakyan*, 281 F.R.D. at 560; *Ellis*, 657 F.3d at 987.  Here, at a

23    minimum, each class member's supposed damages will depend on how much he or

24    she paid for each product, how many products he or she purchased, and whether he

25    or she bought the products in connection with a promotion or other discount

26    program.  Whether they suffered an injury *at all* will also depend on: whether they

27    experienced any benefit from the products, which marketing statements they were

28    exposed to, and whether they bought the same or a similar product again.

- 20 -

1  Individualized facts will be necessary to determine injury and damages, and courts

2  have rejected Rule 23(b)(2) classes under similar circumstances.[44]

3        Finally, since no one can opt out of a 23(b)(2) class, certification will

4  eliminate class members' ability to decide for themselves whether they prefer to

5  seek damages in lieu of injunctive relief.  If the Court certifies a class and a

6  judgment is entered on the injunctive relief claims, res judicata and collateral

7  estoppel will prevent class members from recovering damages.  *See, e.g.*, *Crawford*

8  *v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994); *Zachery v. Texaco Exploration &*

9  *Prods.*, 185 F.R.D. 230, 243-245 (W.D. Tex. 1999) (plaintiffs "are asking the class

10  members being represented here to risk waiving their right to monetary damages

11  solely so that the action for [an injunction] can proceed as a class action.").  The

12  Court should reject Plaintiff's attempt to shoehorn her damages claims into the

13  limited framework of Rule 23(b)(2).

14  **VI.   PLAINTIFF'S 23(b)(3) CLASS FAILS BECAUSE COMMON ISSUES**

15       **DO NOT PREDOMINATE OVER INDIVIDUALIZED ISSUES.**

16        Even if Plaintiff had satisfied Rule 23(a)'s prerequisites—she has not—she

17  must also satisfy Rule 23(b)(3) by proving that (1) common questions of fact and

18  law predominate over any questions affecting only individual members, and (2) a

19  class action is superior to alternate means of resolving the dispute.  Fed. R. Civ. P.

20  23(b)(3); *Dukes*, 131 S. Ct. at 2541; *Lanzarone v. Guardsmark Holdings, Inc.*, 2006

---

21  [44] *See Lozano*, 504 F.3d at 718 (rejecting Rule 23(b)(2) class in suit involving

22  billing practices for cellular phone services); *Bolin v. Sears, Roebuck & Co.*, 231
    F.3d 970, 976 (5th Cir. 2000) (plaintiffs may not "attempt to shoehorn damages

23  actions into the Rule 23(b)(2) framework"); *Edwards v. First Am. Corp.*, 251
    F.R.D. 449, 452–53 (C.D. Cal. 2007) (rejecting Rule 23(b)(2) class because

24  monetary damages were the "essential goal" of the litigation); *Campion v. Old*
    *Republic Home Prot. Co.*, 272 F.R.D. 517, 539 (S.D. Cal. 2011) (rejecting 23(b)(2)

25  class under UCL and CLRA for fraudulently inducing purchase of home warranty
    policies); *Gonzalez*, 247 F.R.D. at 626-27 (no 23(b)(2) certification on UCL,

26  CLRA, and breach of express warranty claims that Pantene Pro-V hair products
    were falsely represented as effective in strengthening hair); *In re Paxil Litig.*, 218

27  F.R.D. 242, 247 (C.D. Cal. 2003) (no 23(b)(2) certification of UCL class of Paxil
    users); *Cholakyan*, 281 F.R.D. 534 (denying 23(b)(2) certification of class of

28  California  vehicle lessees on UCL and CLRA claims for unlawful warranties).

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1   WL 4393465, at *4 (C.D. Cal. Sept. 7, 2006).

2       The essential question is whether issues "subject to generalized proof . . .

3   predominate over those issues that are subject only to individualized proof."

4   *Williams v. Oberon Media, Inc.*, 2010 WL 8453723, at *7 (C.D. Cal. April 19,

5   2010). Common issues predominate only when they constitute such a significant

6   aspect of the action that "there is a clear justification for handling the dispute on a

7   representative rather than on an individual basis." *Antoninetti v. Chipotle Mexican*

8   *Grill, Inc.*, 2012 WL 3762440, at *5-6 (S.D. Cal. Aug. 28, 2012). But if "a class

9   action 'will splinter into individual trials,' common questions do not predominate

10  and litigation of the action in the class format is inappropriate.'" *Akkerman v.*

11  *Mecta Corp.*, 152 Cal. App. 4th 1094, 1102 (2007) (internal citations and

12  references omitted). *See also Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 657 (C.D.

13  Cal. 2000). To determine which aspects of the case are common, the Court must

14  review each element of Plaintiff's causes of action and the facts necessary to litigate

15  those elements. *See Falcon*, 457 U.S. at 160 ("[T]he class determination generally

16  involves considerations that are 'enmeshed in the factual and legal issues

17  comprising the plaintiff's cause of action.'") (internal citation omitted).

18      Here, each proposed class claim—under the UCL, CLRA, and breach of

19  express warranty—requires Plaintiff to prove that she and every class member were

20  exposed to a deceptive claim about one of the products, that there is at least some

21  causal link between the statement and their alleged harm, and that they incurred

22  monetary harm because of their purchases. Whatever evidence Plaintiff might

23  present in support of her individual claim could not prove (at least not in

24  accordance with due process) the claims of every class member. Among other

25  things, many class members have not suffered ***any*** injury, and adjudicating these

26  claims would require the Court to conduct a highly individualized inquiry into, for

27  each class member, (1) which, if any, allegedly misleading statements each saw;

28  (2) whether each of them bought the products based on those statements;

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1   (3) whether each of them bought the products based on their prior personal

2   experience with them; and (4) whether each of them received any of the expected

3   benefits.  These questions are simply not subject to common proof.

4       **A.    Each Cause of Action Requires Proof of Causation or Reliance**

5          To recover damages under the *CLRA*, Plaintiff must "show not only that a

6   defendant's conduct was deceptive but that the deception caused [the plaintiff]

7   harm." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009) (citing *Mass.*

8   *Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (2002)).  In other

9   words, for her CLRA claim Plaintiff must "prove she relied on a material

10  misrepresentation."[45]  Likewise, for ***breach of express warranty***, Plaintiff must

11  show an "affirmation of fact or promise" about the product that became part of the

12  basis of the bargain.  Cal. Com. Code § 2313(1)(a).  Express warranty claims

13  therefore require reasonable reliance. *Moncada v. Allstate Ins. Co.*, 471 F. Supp. 2d

14  987, 997 (N.D. Cal. 2006) ("[u]nder the law relating generally to express warranties

15  a plaintiff must show reliance on the defendant's representation."); *Williams v.*

16  *Beechnut Nutrition*, 185 Cal. App. 3d 135, 142 (1986) ("one must allege the exact

17  terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that

18  warranty which proximately causes plaintiff injury.").[46]

19         Plaintiff's *UCL* claim for restitution also requires a causal connection

20  between the alleged misconduct and harm allegedly suffered by absent class

21  members—Plaintiff's argument that the UCL "lack[s] . . . any requirement to prove

22  actual falsity, reliance or damages" misstates the law.  (*E.g.*, Mot. at 12.)

23  *Tobacco II* did not render causation ***irrelevant*** as to absent class members.  In fact, a

24  ――――――――――

25  [45] *Brownfield v. Bayer Corp.*, 2009 U.S. Dist. LEXIS 63057, at *9 (E.D. Cal.
July 2, 2009).  *See also Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946

26  (S.D. Cal. 2007); *Suzuki v. Hitachi Global Storage Techs., Inc.*, 2007 U.S. Dist.
LEXIS 51605, at *16 (N.D. Cal. July 16, 2007).

27  [46] While some courts have said that express warranty does not contain a separate
requirement labeled "reliance," even those courts acknowledge the statutory

28  requirement that plaintiff allege that defendant made an "affirmation of fact" that is
part of the basis of the bargain. *See Weinstat*, 180 Cal. App. 4th at 1227.

1    number of courts after *Tobacco II* have denied certification in UCL cases where

2    causation and reliance could not be litigated on a classwide basis. *Tucker v. Pac.*

3    *Bell Mobile Servs.*, 208 Cal. App. 4th 201, 228 (2012) ("[e]ven if we assume that

4    there were a common misrepresentation . . . and that the representations were

5    material, Plaintiffs could not present UCL class claims for restitution [here.]");

6    *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 924 (2010) ("Even after the

7    *Tobacco II* decision, the UCL and FAL still require some connection between the

8    defendant's alleged improper conduct and the unnamed class members who seek

9    restitutionary relief."); *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 981 (2009)

10    (no certification of UCL class because of individualized issues of reliance);

11    *Campion*, 272 F.R.D. 517, 535 (S.D. Cal. 2011) (*Tobacco II* is limited to UCL

12    standing, not certification requirements; denying certification of UCL and CLRA

13    claims because of individualized issues of class members' reliance on allegedly

14    deceptive statements pertaining to home warranty plans).

15       **B.**     **Whether Any Consumer Was Injured Is An Individualized Issue**

16       Here, many class members suffered no injury. This means that the ***fact*** of

17    harm or injury—an element of all of Plaintiff's claims[47]—is an individualized issue

18    not subject to class-wide proof. While variations in damage calculations alone will

19    not typically defeat certification, determining whether a class member was harmed

20    *at all* can overwhelm issues common to a class. *E.g.*, *Wilens*, 120 Cal. App. 4th at

21    756 (class "inappropriate" when individual issues "go beyond mere calculation" of

22    damages and "involve each class member's *entitlement* to damages.").

23       Even if Plaintiff proves that ***some*** misrepresentations were made to all class

24    members, that does ***not*** mean that everyone is entitled to restitution or that such a

25

26    ---
   [47] *See* Section V.A, *supra*. Each cause of action requires plaintiff to show that the
   members of the class suffered injury because of Neutrogena's alleged conduct.

27    *E.g.*, *Wilens v. TD Waterhouse Grp., Inc.*, 120 Cal. App. 4th 746 (2003) (CLRA);

28    *Tobacco II*, 46 Cal. 4th at 328 (UCL); *Sevidal*, 189 Cal. App. 4th at 925, 928 (UCL
   and CLRA); *Sanders*, 672 F. Supp. 2d at 987.

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1   claim should be certified—even under the UCL.  In *Tucker v. Pacific Bell Mobile*

2   *Services*, for example, the plaintiff sued his cellphone provider, claiming that "each

3   and every rate plan offered for sale" by the defendants "contain[ed] a material

4   misrepresentation with respect to the actual number of airtime minutes" covered by

5   the plan.  *Tucker*, 208 Cal. App. 4th at 218.  Because many customers had no

6   restitution claim, the Court refused to certify a class:  "Even if we assume that there

7   were a common misrepresentation as to the number of conversational minutes in

8   the Defendants' advertised rate plans, and that the representations were material,

9   Plaintiffs could not present UCL class claims for restitution."  *Id.* at 228. [48]

10       Although "relief under the UCL and FAL 'is available without individualized

11  proof of deception, reliance, and injury'" those statutes "still require that plaintiffs

12  suffer injury in fact."  *See In re Google AdWords Litig.*, 2012 WL 28068, at *10

13  (N.D. Cal. Jan. 5, 2012).  And no class can be certified where, as here, "the

14  question of [who] among the hundreds of thousands of proposed class members are

15  even entitled to restitution would require individual inquires."  *Id.* at *14.  In

16  *Google*, plaintiffs alleged deceptive practices in connection with Google's

17  AdWords program—which "allows advertisers to create online advertisements and

18  display them through various channels on the Internet."  *Id.* at *1.  The program

19  was allegedly deceptive because some ads were placed on error pages or

20  undeveloped websites.  But since such ads still had benefits for some class

21  members, certification was improper because "there [was] no systematic way to

22  identify and exclude from Plaintiffs' proposed class the many advertisers who have

23  no legal claim to restitution because they derived direct economic benefits from ads

24

25  _____

26  [48] *See also Campion*, 272 F.R.D. at 536 (S.D. Cal. 2011) ("[t]he fact the alleged
    misrepresentations were made in the home warranty plans and a copy of the plan

27  was received by every class member does not, as Plaintiff posits, end the inquiry as
    to whether common reliance should be inferred.").  *Cohen*, 178 Cal. App. 4th at

28  979-82 (class members not exposed to uniform representations were in a "myriad of
    different positions" and some were not motivated by misrepresentations).

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1  placed on parked domains and error pages." *Id.* at *11.[49] The Southern District of

2  Illinois recently reached the same conclusion when it rejected a putative UCL class

3  action over the marketing of an oral contraceptive. *In re Yasmin & Yaz*

4  *(Drospirenone) Mktg., Sales Pract. & Prod. Liab. Litig.*, 2012 WL 865041, at *12,

5  *19 ("in assessing whether a class is overly broad for purposes of class

6  certification, [the court] considers whether the putative class includes members who

7  could not possibly have been injured by the defendant's conduct.").

8       Here, many class members suffered no injury. Under no plausible

9  interpretation of the facts can it be said that a decision to buy these products ***again***

10  was due to deceptive marketing, and Plaintiff's bare allegation that the products are

11  "worthless" is rebutted by the overwhelming evidence that these products can and

12  do provide benefits to many users. (*See* Powers Decl. Ex. 2 [Baumann Report] at

13  11-14; Leyden Decl. ¶¶ 5, 7, 15-16, 17, 20, 21, 24, 31-33, 36; Hornby Decl. ¶¶ 12,

14  15, 17, 19, 22.) And, as discussed below, the statements to which consumers were

15

16  _____

   [49] *Stearns v. Ticketmasters Corp.* (discussed in *In re Google*) has no application

17  here.  655 F.3d 1013 (9th Cir. 2011).  ***First***, the court in *Stearns* did not determine
   that a class should be certified—it merely held that the trial court's refusal to certify

18  a class (before the *Tobacco II* decision) was based on an inaccurate reading of the
   UCL and remanded for reconsideration. ***Second***, the court's discussion of the UCL

19  focused on the standing (or lack thereof) of unnamed class members in light of
   *Tobacco II*, and the court reiterated an earlier holding that "'[i]n a class action,

20  standing is satisfied if at least one named plaintiff meets the requirements . . . .
   Thus, we consider only whether at least one named plaintiff satisfies the standing

21  requirements.'" *Id.* at 1021.  Here, Neutrogena is not opposing Plaintiff's Motion
   because putative class members lack standing (although many do).  Instead, as in

22  *Google*, certification must be denied here because (among other reasons) the
   proposed class encompasses many unharmed members. *See Yasmin*, 2012 WL

23  865041, at *19 ("In conducting its rule 23(b)(3) analysis [of a UCL claim], the
   Court is concerned with the substantive elements necessary to maintain a claim and

24  establish entitlement to restitutionary relief; not the elements necessary for
   establishing standing.").  ***Third***, *Stearns*' discussion of the CLRA is distinguishable

25  because, as the court explained:  "If the misrepresentation or omission is not
   material as to all class members, the issue of reliance 'would vary from consumer to

26  consumer' and the class should not be certified."  655 F.3d at 1022-23.  That is
   precisely the case here:  reliance and materiality cannot be presumed because of the

27  varying statements consumers were exposed to, and because repeat purchasers rely
   on their own experiences.

28

- 26 -

1    exposed vary considerably.  Consumers who got what they paid for or who were

2    never exposed to a "false" statement suffered no injury, and common questions

3    cannot not predominate where, as here, the class includes uninjured members.[50]

4          **C.**    **Plaintiff Cannot Show Economic Injury Using Class-Wide Proof**

5          Plaintiff has also not identified any valid method for calculating the harm to

6    the putative class.  The UCL does not grant courts authority to order the return of

7    arbitrary amounts of money.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.

8    4th 1134, 1148 (2003) ("A court cannot, under … section 17203, award whatever

9    form of monetary relief it believes might deter unfair practices.")  Instead,

10   restitution is permitted only to the extent necessary to "return . . . the excess of what

11   the plaintiff gave the defendant over the value of what the plaintiff received."

12   *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 174 (2000), and that

13   restitution "must be of a measurable amount to restore to the plaintiff what has been

14   acquired by violations of the statutes, and that measurable amount must be

15   supported by evidence." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th

16   663, 698 (2006).  Because the goal of restitution is to "return class members to

17   status quo, the amount of restitution due must account for the benefits received."

18   *Google Adwords*, 2012 WL 28068, at *15.  *See also Yasmin*, 2012 WL 865041, at

19   *21 ("in addition to showing conduct that is 'likely to deceive,' a party seeking

20   restitutionary relief [under the UCL] must establish the loss of money or property

21   which 'may have been acquired' by means of the deceptive conduct.").  *See also*

22   *Vioxx*, 180 Cal. App. 4th at 131. ("The difference between what the plaintiff paid

23   and the value … received is a proper measure of restitution.  … In order to recover

24

25   [50] *See In re Yasmin*, 2012 WL 865041 at *26; *Mazur v. eBay Inc.*, 257 F.R.D. 563,
     567 (N.D. Cal. 2009) (putative class included "non-harmed" members); *In re Flash*
26   *Memory Antitrust Litig.*, 2010 WL 2332081, at *12 (N.D. Cal. June 9, 2010)
     (damages methodology "would . . . sweep in an unacceptable number of uninjured
27   plaintiffs"); *Mahfood v. QVC, Inc.*, 2008 WL 5381088, at *4 (Sept. 22, 2008)
     (putative class included "consumer[s] [who] could not have suffered any injury
28   from relying" on false statement).

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1  under this measure, there must be evidence of the actual value … received.").

2      Class members who received the advertised benefits or who were not exposed

3  to any false statements got the value they expected—as did repeat purchasers,

4  ███████████ Redacted ███████████ (Nelson Decl. ¶¶ 22, 26.)  And,

5  as discussed above, the benefits each individual receives will be affected by many

6  factors, including genetics, lifestyle, and environment. Any valid calculation of

7  damage or restitution will not be subject to common proof.[51]

8      **D.**    **Different Class Members Were Exposed to Different Messages**

9      Where different class members were exposed to different allegedly

10  misleading statements, courts deny certification of UCL and CLRA claims since

11  exposure cannot be resolved on a class wide basis.[52]  Similarly, a plaintiff alleging

12  breach of an express warranty must show that he was exposed to the statement

13  creating the warranty. *Moncada*, 471 F. Supp. 2d at 997; *Williams*, 185 Cal. App.

14  3d at 142 ("one must allege the exact terms of the warranty, plaintiff's reasonable

15

16  [51] *See, e.g.*, *Colgan*, 135 Cal. App. 4th at 677, 700 ("although the purchasers did not receive entirely what they bargained for … [c]lass members did benefit from the

17  quality, usefulness, and safety of these multi-purpose tools."); *Google Adwords*, 2012 WL 28068, at *15-*16 ("in many instances, individual proof would show that

18  advertisers received significant revenues and other benefits from ads placed on parked domains and error pages—benefits that would need to be individually

19  accounted for in any restitution calculation"); *Wilens v. TD Waterhouse Grp., Inc.*, 120 Cal. App. 4th 746, 756 (2003) (certification improper where "substantial and

20  numerous factually unique questions … determine . . . individual right to recover."); *Block v. Major League Baseball*, 65 Cal. App. 4th 538, 543 (1998)

21  ("[e]ach [circumstance involving each plaintiff] will have to be examined for each class member" to determine right to recovery).

22  [52] *See Sevidal*, 189 Cal. App. 4th at 926, 928 (affirming denial of certification based

23  on mislabeling of clothing as "made in the U.S." where a majority of the class did not see false statements); *Cohen*, 178 Cal. App. 4th at 980 (UCL does not authorize

24  relief "on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice"); *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal.

25  App. 4th 830, 848-49 (2009) (affirming denial of certification because of individualized issues as to "what materials, disclosures, representations, and

26  explanations were given to any given purchaser."); *Pfizer, Inc. v. Superior Court*, 182 Cal. App. 4th 622 (2010); *Campion*, 272 F.R.D at 536-537 (S.D. Cal. 2011)

27  (rejecting UCL and CLRA class where "the proposed class members may have seen some, all or none of these statements prior to the purchase of their home warranty

28  plans due to the varying ways in which they acquired their plans").

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1   reliance thereon, and a breach … which proximately causes plaintiff injury.").

2        Here, there are substantial differences between the print, television, and

3   internet advertisements for the Rapid Wrinkle Repair products and the products'

4   packaging—such that many consumers will have seen only a handful of the wide

5   array of statements Plaintiff challenges, and the particular message (and

6   combination of messages) that each consumer was exposed to will vary

7   significantly.  First, according to Plaintiff's own allegations, ***the "vast majority of***

8   ***consumers" did not read the back of the package before buying the products***.

9   (FAC ¶ 90.)  Yet most of the claims Plaintiff challenges are located ***only on the***

10   ***back*** of the packages, including the statements "clinically proven," "helps to

11   smooth wrinkles fast and diminish the look of age spots," "renews the look of skin

12   throughout the day," "visible results in just one week" (on RWR Eye), "fade the

13   look of stubborn crow's feet," "[b]righten and even under eye area," "[s]mooth fine

14   lines and texture," "[r]educe the look of dark circles," and "even out skin tone."

15   *See* (Declaration of Edward Dubendorf  in Support of Mot. for Class Cert.

16   ("Dubendorf Decl."), Exs. 1-6; Compl. ¶¶74-79.)  Consumers who did not stop to

17   read the entire label were not exposed to any of those statements.[53]

18        Second, the challenged statements also vary substantially between products.

19   For example, only RWR Serum and Night include the statement "100% of women

20   had noticeable results."  (Dubendorf Decl. Exs. 2-3.)  Unlike the three other RWR

21   products, the front of the box for RWR Eye only reads, "targets fine lines & crow's

22   feet," ***not*** "visible results in one week." (*Id.*, Ex. 4).  Charts on the back of the box

23   for both HSAW products explain that they "significant[ly]" "soften and smooth

24   skin" and "improve skin clarity" within one week, but that they take up to eight

25   weeks to start to "visibly reduce age spots"—statements that are not included on the

26   RWR boxes. (*Id.*, Exs. 5-6.)  The RWR Eye box also includes statements about

27

28   [53] Some consumers likely did read the back of the box before buying.  But whether each consumer did so will be an important individualized issue.

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1    "dark circles," and the "under eye area" that are not on the other boxes. (*Id.*, Ex. 4.)

2        The statements in the print and television ads also varied. Only one of the

3    RWR print ads states that "100% of the women had noticeable results," another

4    states that the products "smooth wrinkles," another that they "visibly reduce

5    wrinkles," and yet another that they "visibly reduce fine lines and wrinkles." (Yang

6    Decl., Exs. 1-4.) And the internet banner ads use ***none*** of the statements Plaintiff

7    challenges. Instead, they simply say that the products have the "fastest retinol

8    formula available" (which Plaintiff does not challenge). (*Id.*, Ex. 10.) The

9    television ads also vary. A RWR TV ad from 2011, for example, stated that the

10    products have the "fastest retinol formula available" and can "smooth wrinkles in

11    just one week." (*Id.*, Ex. 5.) Another ad from 2011 omits the "fastest retinol

12    formula available," while a third, from 2012, states that the products can "visibly

13    reduce[]" wrinkles. (*Id.*, Exs. 6, 9.)

14        The different messages each consumer saw will have a huge impact on his or

15    her claim. For example, someone who saw an internet ad and then purchased RWR

16    Eye (but who did not read the back of the box) would have seen ***only*** "the fastest

17    retinol formula available" (in the ad) and "targets fine lines and crow's feet" (front

18    of the box). (*Id.* Ex. 10; Dubendorf Decl. Ex. 4.) That consumer has no claim—

19    Plaintiff does not challenge the first statement, and the second cannot possibly be

20    actionable. Someone who saw the first print ad (or the 15-second TV ads) did not

21    see "the fastest retinol formula available". (Yang Decl. Exs. 1, 6-7, 9.) And those

22    who bought RWR Night after seeing a TV ad (but did not read the back of the box)

23    never saw "100% of women had noticeable results in just one week," or "Clinically

24    proven to help: fade the look of stubborn deep wrinkles, including crow's feet

25    forehead & cheek wrinkles." (*Id.*, Exs. 5-9; Dubendorf Decl. Ex. 2.) There is no

26    "uniform" message that can fairly substitute for the different statements to which

27    each consumer was exposed. Just as in *Pfizer*, *Sevidal*, *Kaldenbach*, and *Campion*,

28

1  that variation creates individualized issues that prevent certification.[54]

2      **E.**    **An Inference of Reliance or Materiality Would Be Inappropriate**

3      To avoid the need to grapple with individualized causation questions,

4  Plaintiff argues that the Court may "infer" reliance and materiality. (Mot. at 11-

5  15.) A rebuttable inference of reliance arises as to the class ***only*** if Plaintiff

6  demonstrates that the allegedly false representation was material, made to all class

7  members, and all class members acted consistently with reliance.[55] But "if the issue

8  of materiality or reliance is a matter that would vary from consumer to consumer,

9  the issue is not subject to common proof, and the action is properly not certified as

10  a class action." *Vioxx*, 180 Cal. App. 4th at 129. Accordingly, "[t]he rule

11  permitting an inference of common reliance where material misstatements have

12  been made to a class of plaintiffs will not arise where the record will not permit it."

13  *Tucker*, 208 Cal. App. 4th at 228 (*citing Mass. Mut.*, 97 Cal. App. 4th at 1294).[56]

14      As discussed above, the evidence here precludes any class-wide inference of

15  materiality or reliance. The different messages each consumer was exposed to, as

16  well as the evidence that the products provide benefits to many consumers, means

17  that class members' claims necessarily present individualized reliance and

18  ---

19  [54] *E.g., Pfizer*, 182 Cal. App. 4th at 631 ("one who was not exposed to the alleged misrepresentations and therefore could not possibly have lost money or property as a result of the unfair competition is not entitled to restitution"); *Campion*, 272

20  F.R.D at 524, 536-537 ("proposed class members may have seen some, all or none of these statements prior to the purchase of their home warranty plans" so "reliance

21  could not be inferred or established on a class-wide basis").

22  [55] *See Occidental Land v. Superior Court*, 18 Cal. 3d 355, 363 (Cal. 1976)); *see also Gonzalez*, 247 F.R.D. at 624 ("[*Vasquez v. Superior Court*, 4 Cal. 3d 800 (Cal.

23  1971)] and its progeny only permit an inference of common reliance when the allegations demonstrate that a single, material misrepresentation was directly made

24  to each class member."); *Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 851 (rejecting inference "absent evidence of uniform material

25  misrepresentations having been actually made to class members."); *Campion*, 272 F.R.D at 536 ("Where a class of consumers may have seen all, some, or none of the

26  advertisements … an inference of common reliance or liability is not permitted").

27  [56] In re *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010), which Plaintiff cites, provides no support for an inference here. (*See* Mot. at 13-14.) That

28  case simply stands for the unremarkable conclusion that consumers would consider material the fact that the product was an ***illegal steroid***. 181 Cal. App. 4th at 157.

1    materiality issues.[57]  Representations are also immaterial if consumers may have

2    made the same choice even without the allegedly false statement.  *See, e.g., Vioxx,*

3    180 Cal. App. 4th at 133-34 (individual issues predominated where "Vioxx *did not*

4    present 'an increased risk of death' compared to traditional NSAIDs for *all* patients

5    . . . .  Some patients would still take Vioxx today if it were on the market . . . .").

6    Here, since repeat purchasers know exactly what benefits to expect, many would

7    clearly buy the products again no matter what was on the box.  And even if reliance

8    could be presumed here, Neutrogena is entitled to offer class member evidence to

9    rebut any such inference.  *E.g., Vasquez,* 4 Cal. 3d at 814 ("Defendants may, of

10   course, introduce evidence in rebuttal.");  *Quezada v. Loan Ctr. of Cal., Inc.,* 2009

11   WL 5113506, at *5 (E.D. Cal. 2009) (presumption of reliance rebutted where

12   plaintiff had not read the allegedly misleading loan agreement).  On these facts,

13   Neutrogena will be able to offer such evidence for many class members, and

14   individualized inquiries will be required to determine if they actually relied on any

15   alleged misrepresentations.  *See, e.g., Granberry v. Islay Invs.,* 9 Cal. 4th 738, 751

16   (1995) (defense of setoff must be resolved at individual evidentiary hearings).

17   **VII.   PLAINTIFF'S PROPOSED CLASS SUFFERS FROM A HOST OF**
     **OTHER PROBLEMS**
18

19            First, Plaintiff must also satisfy the "implied requirement that the proposed

20   classes be ascertainable."[58]  Since the proposed classes include many uninjured

21   [57] *Campion,* 272 F.R.D at 534  ("[t]he fact the alleged misrepresentations were
     made in the home warranty plans and a copy of the plan was received by every
22   class member does not, as Plaintiff posits, end the inquiry as to whether common
     reliance should be inferred.")  *Cohen,* 178 Cal. App. 4th at 979-82 (class members
23   were not exposed to uniform representations and were in a "myriad of different
     positions" insofar as some class members indicated that they had not been
24   motivated by the alleged misrepresentations); *Caro v. Proctor & Gamble Co.,* 18
     Cal. App. 4th 644, 668-69 (1993) (materiality not presumed where consumers
25   differed in whether "fresh" and "no additives" labels would lead them to believe
     orange juice was premium).
26   [58] *Gonzales v. Comcast Corp.,* 2012 WL 10621, at *20 (E.D. Cal. Jan. 3, 2012); *see*
     *also In re Intel Corp. Microprocessor Antitrust Litig.,* 2010 WL 8591815, at *32
27   (July 28, 2010) ("A class is overly broad if it includes members who have not
     suffered injury.  ...  If '[d]etermining membership in the class would essentially
28

                                                                    NEUTROGENA'S OPPOSITION TO
                                            - 32 -                   MOTION FOR CLASS CERTIFICATION
                                                                    CV 12-4624 R

1   members, they are overbroad and unascertainable.[59]  Second, certification will

2   deprive Neutrogena of its right to assert individual defenses.  "[C]ertification does

3   not serve to enlarge substantive rights or remedies."  *Feitelberg v. Credit Suisse*

4   *First Boston, LLC*, 134 Cal. App. 4th 997, 1014 (2006); *see also Broussard v.*

5   *Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998) ("[i]t is

6   axiomatic that [class actions] cannot be allowed to expand the substance of the

7   claims of class members").  Class actions cannot be used to "deprive defendants of

8   their substantive rights merely because those rights are inconvenient in light of the

9   [class] litigation posture plaintiffs have chosen."  *Granberry*, 9 Cal. 4th at 749.

10  This is not a case where idiosyncratic defenses might apply to a handful of people.

11  Neutrogena will have real defenses[60] to many class members' claims, and someone

12  who otherwise has no claim should not prevail just because her claim is combined

13  with others in a class.  *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 462

14  (1974) ("Class actions are provided only as a means to enforce substantive law.").

15       Finally, Plaintiff has failed to prove that a class action is "superior" to other

16  available methods for adjudicating this controversy.  *See* Fed. R. Civ. P. 23(b)(3).

17  Plaintiff must show that the "likely difficulties in managing a class action" can be

18  ───────────────────

19  require a mini-hearing on the merits of each class member's case . . . a class action [is] inappropriate for addressing the claims at issue.'")

20  [59] *See Akkerman v. Mecta Corp.*, 152 Cal. App. 4th 1094, 1100-01 (disagreed with, but not overruled, by *Cohen*,178 Cal. 4th 966 (2009)) (plaintiff "did not show

21  how he could easily identify those who were deceived" and "sought restitution for all class members without limitation . . . [which] would require a windfall award of

22  restitution to all who received ECT even if the procedures were successful and beneficial."); *Gonzales*, 2012 WL 10621, at *20 ("A class is not ascertainable when

23  the proposed definition includes individuals who were never injured by the defendant's conduct …"); *Mazur*, 257 F.R.D. at 567 (class overbroad and not

24  ascertainable where it included unharmed individuals); *Colpinto v. Esquire Deposition Servs.*, 2011 WL 913251, at *4 (C.D. Cal. Mar. 8, 2011) (same).

25  [60] Whether a consumer was injured here will require an inquiry into a host of individual issues that will (in many cases) tend to disprove class members' claims.

26  Neutrogena will also be able to assert affirmative defenses, e.g., a repeat purchaser's claims would be barred (or at least reduced) on the grounds of waiver

27  and mitigation, as would the claims of those who received some, but not all, of the promised benefits.  *See, e.g., Hunter v. Croysdill*, 169 Cal. App. 2d 307, 318 (1959)

28  (mitigation); *LeClercq v. Michael*, 88 Cal. App. 2d 700, 702 (1948) (waiver).

- 33 -

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1    overcome, *id.* at 23(b)(3)(D), an inquiry that "encompasses the whole range of

2    practical problems" that could make class treatment inappropriate. *Eisen v. Carlisle*

3    *& Jacquelin*, 417 U.S. 156, 164 (1974). Here, the the proposed class is

4    unmanageable and will not be the superior method of adjudicating these claims.[61]

5    **VIII.  PLAINTIFF CHOW IS NOT TYPICAL OR ADEQUATE**

6          To satisfy typicality, Plaintiff must show that she is (1) part of the proposed

7    class, (2) possesses the same interest as the class, and (3) suffered the same injury

8    as the class. *Falcon*, 457 U.S. at 156. But here, her claims are not typical and she

9    will be subject to unique defenses that make her inadequate. *Hanon v.*

10   *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("certification should not be

11   granted if 'there is a danger that absent class members will suffer if their

12   representative is preoccupied with [unique] defenses . . . .'").

13         Ms. Chow's unusual history of skin ailments and treatments could have

14   masked the products' benefits—especially the Botox injections she received while

15   using the products. She suffered from severe facial rashes, breakouts, and

16   pigmentation scars as a result of toxic mold exposure—effects that lingered for a

17   year after she left her contaminated apartment in 2006. (*See* Powers Decl. Ex. 1

18   (Chow Dep.) at 69:23-70:3; 70:7-71:9; 83:25-84:5; 86:11-87:2; 90:2-11.) She has

19   had five Botox injections since 2010, one Juvéderm injection (a gel injected into the

20   face) and laser skin facial treatments. She also smokes intermittently. (*Id.* at 78:21-

21   79:11, 91:8-103:11, 103:25-104:104:11, 118:11-19, 118:20-119:12.) Ms. Chow

22   also saw some benefits from more expensive retinol products—although she

23   claimed that the prescription Retin-A her doctor prescribed did nothing. (*Id.* at

24   106:10-14, 113:15-17, 106:10-109:7, 110:18-20.) If these experiences are typical,

25

26   ─────────────────────
     [61] *See Zinser*, 253 F.3d at 1192 ("If each class member has to litigate numerous and
27   substantial separate issues to establish his or her right to recover individually, a
     class action is not 'superior'"'.); *Bridgestone/Firestone*, 288 F.3d at 1018 (where
28   "claims must be adjudicated under the law of so many jurisdictions, a single
     nationwide class is not manageable.").

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R

1   they illustrate the individual issues that will arise in each class member's claim.

2       Ms. Chow also cannot sue over the RWR Serum because she never bought it.

3   It is a basic principle that a plaintiff must have standing to bring claims in federal

4   court, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992), and Plaintiff

5   has no claim (under any cause of action) as to a product she never bought. *Accord*

6   *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351-52 (2006) (standing must be

7   shown for every claim); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,

8   528 U.S. 167, 181-83 (2000) (particularized injury must affect plaintiff personally).

9   Plaintiff cannot sue over a product she never bought, including in a class action.[62]

10   **IX.   CONCLUSION**

11       For the foregoing reasons, Neutrogena respectfully requests that the Court

12   deny Plaintiff's motion in its entirety.

13   Dated:     October 4, 2012            O'MELVENY & MYERS LLP

14

15                             By: _____

                                    Matthew D. Powers

16                             Attorneys for Defendant

                            Neutrogena Corp.

17

18

19

20

21

22

23

---

24   [62] *See Larsen v. Trader Joe's Co.*, No. 3:11-cv-05188-SI, Dkt. 41 at 6 (N.D. Cal.

25   June 14, 2012); *Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 WL 1497096, at *4
    (E.D. Cal. Apr. 19, 2011); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL

26   159380, at *3 (N.D. Cal. Jan. 10, 2011), *aff'd on other grounds*, 2012 WL 1131526
    (9th Cir. Apr. 5, 2012); *Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal.

27   Feb. 9, 2010) (plaintiff "cannot expand the scope of his claims to include a product
    he did not purchase"). *See also Kwikset v. Superior Court*, 51 Cal. 4th 310, 317

28   (2011).

NEUTROGENA'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CV 12-4624 R